MERLIN J. GERARDOT *v.* DONALD C. EMENHISER,
MARY R. EMENHISER.

[No. 3-475A76. Filed June 20, 1977.]

*Jeanne S. Miller,* of New Haven, for appellant.

*Jerome J. O'Dowd,* of Fort Wayne, for appellees.

HOFFMAN, J.—Plaintiff-appellant Merlin J. Gerardot brought an action against defendants-appellees Donald C. Emenhiser and Mary R. Emenhiser for their failure to pay him a real estate commission upon the sale of their farm located in Allen County, Indiana. The trial court entered judgment for the Emenhisers based, among other things, on findings that no written listing agreement existed between the broker (Gerardot) and the sellers (Emenhisers), that

Gerardot was not instrumental in bringing the sellers and buyer together and that the ultimate transfer was substantially altered in form, substance, and as to the parties involved. Upon the overruling of his motion to correct errors Gerardot perfected this appeal alleging as error that the findings of the trial court were contrary to the evidence and that its conclusions of law based thereon were erroneous.

The record reveals that appellee Dr. Emenhiser with his wife had been attempting to sell their 239.5 acre farm in Allen County, Indiana, for 10 to 12 years. This included on one occasion an unsuccessful offer through a Mr. Zuber to another farmer named Martin Maciejko, who was the owner of valuable land suitable for development near Fort Wayne, Indiana. During six months in 1971 Dr. Emenhiser had made an exclusive listing agreement with Joe Eisenbarger Associates, the real estate firm for whom appellant Garardot worked. Upon the expiration of this agreement, with no sale having been made, Gerardot requested his own listing but was refused. However Dr. Emenhiser did agree to pay him a commission if he would sell the farm for $175,000. Thereafter Gerardot tried to conclude an agreement between Martin Maciejko and Dr. Emenhiser but was unable to do so because Maciejko apparently had objections to the size, topography and improvements of the Emenhisers' farm.

On March 9, 1972, Gerardot relayed a different offer to Dr. Emenhiser for $160,000, from Donald A. Rekeweg and discussed further the possibility of a sale to Martin Maciejko. As a result Gerardot received a letter from Dr. Emenhiser which referred to the Rekeweg offer and proposed a counteroffer. The March 18, 1972, letter stated, in pertinent part:

"Counter proposal to offer in contract dated 3-9-'72.

"1. Farm & Buildings: $175,000.00.

"2. All personal property: To be invoiced, listed, and priced. Buyer has priviledge (sic) of buying all, any part, or none of items listed and priced as personal property.

"3. Closing to be within 1-2 weeks after seller submits necessary documents and buyer has the average time to inspect and verify.

"4. $20,000.00 to be paid on closing date. Interest at rate of 7% to start on date of closing, payable semi-annually.

"5. Principal payments to start—at option of buyer. Amount of payments to be at buyer's option. Will sell with either a mortgage for the balance or on a land contract, whichever the buyer wants. Length of contract in either case: 10 years from date of closing.

"6. Taxes to be prorated, on date of closing, based on prior year's taxes.

"7. All of above subject to Tenant's rights for crop year of '72. Tenant's rights ends March 1, 1973."

The letter further stated:

"If the above or approximate deal should go through, I would be willing to pay you 6% on the first $50,000.00, 5% on the balance of the $175,000.00. I would not expect to pay you any commission on the sale of any of the personal property.

"In event above sale does not materialize, as of date of final rejection, you have your two customers as per our agreement for a 6 mo. period.

"I am planning on first, you and your associates have had a couple years to produce a buyer, so I'll try as per, advertising both farms myself for a month or two. If no results, I'm going to list for 6 mo. with another realtor.

"I will expect an answer from you on all I have written by Apr. 4, '72. In event I do not hear by that time, I will count it as a negative reply."

While not responding in writing to Dr. Emenhiser's letter by the April 4, 1972, deadline, Gerardot nevertheless brought another offer to the owner from one James Lomont. On April 25, 1972, Gerardot called Dr. Emenhiser about Lomont's offer. Dr. Emenhiser replied that he had received it but had taken a better offer, selling the farm instead to Joseph Zehr, president of North Eastern Enterprises, Inc.

Joseph Zehr had been negotiating with Maciejko for some time. Having previously purchased 37½ acres of farmland

from Maciejko for development, Zehr was interested in purchasing the remainder of his land near Fort Wayne, Indiana, for the same purpose.

As a result Zehr arranged for a trade which involved putting the Emenhiser farm together with two other farms owned by two Westrick families in return for getting the valuable Maciejko farm to develop. Under this arrangement Maciejko then became the purchaser of the Emenhisers' land indirectly through North Eastern Enterprises, Inc. After the April 25, 1972, telephone call disclosing Zehr's purchase, Gerardot attempted to secure his alleged real estate commission from Dr. Emenhiser for the sale of the farm to "Zehr and/or the Maciejkos" but was refused.

On appeal the thrust of Gerardot's argument is that he had an enforceable agreement with Dr. Emenhiser for a real estate commission based upon Dr. Emenhiser's letter of March 18, 1972, and the effective transfer of land to Martin P. Maciejko.

In this regard appellant first contends that the trial court erred in its finding that "[n]o written listing agreement existed between Gerardot and Emenhiser." It is argued instead that the undisputed evidence disclosed that Dr. Emenhiser's letter of March 18, 1972, in conjunction with an earlier conversation on December 26, 1971, and a March 13, 1972, telephone call discussing Maciejko were sufficient to constitute a listing agreement. Furthermore Gerardot urges that an agreement for the payment of a real estate commission does not require all the terms of the sale nor the signature of the broker. Parole evidence is said to be allowable for purposes of clarification as well so long as no material alterations of the contract are affected thereby.

Appellee responds that the evidence of an agreement is insufficient to support the requirement of IC 1971, 32-2-2-1

(Burns Code Ed.),[1] that real estate commission contracts be in writing. Appellee citing *Zimmerman* v. *Zehendner* (1905), 164 Ind. 466, 73 N.E. 920, contends moreover that the material elements of the alleged contract were oral thus making Gerardot's claimed listing as a whole void.

In *Zimmerman* our Supreme Court considered the applicability of what is now IC 1971, 32-2-2-1, *supra,* to an agreement to pay a real estate commission which was incorporated by reference in a written contract for the sale of a farm between the seller and the buyer. Since no written reference was made in the collateral writing to the amount of the fee, the court held the agreement to be lacking a material element. Thus the contract was considered outside the confines of IC 1971, 32-2-2-1, *supra,* and unenforceable.

In the case at bar the letter of March 18, 1972, represents a counter-offer to the Rekeweg offer Gerardot had previously forwarded to Dr. Emenhiser in Florida. In it Dr. Emenhiser agreed to pay Gerardot a commission but this counter-offer was explicitly conditioned on a response by Gerardot to have been received prior to a deadline of April 4, 1972. Without such a response Emenhiser stated, ". . . I will count it as a negative reply." Drawn into question therefore is whether Dr. Emenhiser's counter-offer was accepted by Gerardot in a manner sufficient to render the March 18, 1972, letter a contract capable of enforcement. We conclude that it was not.

The specific purpose of IC 1971, 32-2-2-1, *supra,* is to prevent disputes over the terms of a commission contract for the sale of real estate. Where, as here, several dealers

---

1. IC 1971, 32-2-2-1 (Burns Code Ed.), reads as follows:

"Commission for sale of land.—No contract for the payment of any sum of money or thing of value, as and for a commission or reward for the finding or procuring by one [1] person of a purchaser for the real estate of another, shall be valid unless the same shall be in writing, signed by the owner of such real estate or his legally appointed and duly qualified representative: Provided, That any general reference to such real estate sufficient to identify the same shall be deemed to be a sufficient description thereof. [Acts 1901, ch. 67, § 1, p. 104; 1913, ch. 219, § 1, p. 638.]"

were attempting to secure the sale of real estate for a seller, it becomes imperative that a writing existed between the seller and broker defining the essential terms of their relationship. *Selvage* v. *Talbott* (1911), 175 Ind. 648, 95 N.E. 114.

In the case at bar, the trier of fact could readily infer upon weighing the evidence and assessing the credibility of the witnesses that Gerardot's failure to reply in writing constituted a negative reply within the terms of the offer. Moreover subsequent phone calls involving other potential buyers with different bids and associated conditions could not, standing alone, imply an acceptance of Dr. Emenhiser's offer. Where the owner has made an offer requiring an answer by a certain date and where under the statute a non-written reply is inoperative, a valid contract for a commission fee cannot be said to exist. *Carskaddon* v. *The City of South Bend* (1895), 141 Ind. 596, 39 N.E. 667; *Gates et al.* v. *Petri* (1957), 127 Ind. App. 670, 143 N.E.2d 293. Without a written acceptance no agreement can be presumed. In order for an offer and an acceptance to constitute a contract, the acceptance must meet and correspond with the offer in every respect neither within nor going beyond the terms proposed, but actually meeting them on all points. *Gates et al.* v. *Petri, supra.*

Appellant's argument that he did not have to reply in writing to Dr. Emenhiser's offer equates inappropriately the need for a contract acceptance with the need for a broker's signature. In this context it should be noted that unlike a unilateral contract form offered by a broker requiring the signature of a seller, the March 18, 1972, letter was bilateral in nature and involved a counter-offer from Dr. Emenhiser upon which there was no apparent evidence of acceptance. Thus Gerardot's attempt to gain support from *Andrews* v. *Peters* (1924), 82 Ind. App. 200, 145 N.E. 579, must fail. *Andrews* involved a contract between buyer and seller which contained a provision requiring the payment of a commission

to the broker. The court held that no signature was required of the broker since he was positively identified as a third-party beneficiary to an otherwise enforceable contract between vendor and vendee. *Andrews v. Peters, supra.* No such contract existed between Dr. Emenhiser and Maciejko. Appellant's claim stems purely from the alleged agreement between broker and seller and does not have the benefit of a collateral contract of sale.

Appellant would have this court discern from the evidence that when he called Dr. Emenhiser on March 25, 1972, and told him that Zehr would be coming to Florida to talk about buying the farm for Maciejko a satisfactory acceptance of the offer was completed. Appellant would further have us glean from the evidence that the requirement of an acceptance by April 4, 1972, applied only to the counter-offer to Rekeweg and not the general listing agreement. We reject both these invitations to weigh the evidence. It is not within this court's purview to draw a different inference from the evidence than that legitimately drawn by the trier of fact.

Moreover these alleged ambiguities, if any there be, derive only from the lack of a writing containing the essential elements of agreement. IC 1971, 32-2-2-1, *supra,* precludes enforcement of a real estate commission agreement not in writing for just such reasons. The case at bar involves no more than another example of the controversies intended to be so avoided and presents no reason for deviation from the statutory norm.

Appellant next contends that even if Dr. Emenhiser did not agree in writing to pay him a commission as real estate broker his partial performance in getting a buyer for the farm would remove the contract from the statute of frauds. Relying on *Voelkel v. Berry* (1966), 139 Ind. App. 267, 218 N.E.2d 924, Gerardot argues that his performance of services pursuant to December 26, 1971, and the promise of Dr. Emenhiser to pay a commission would be sufficient to support

the owner's written contract of March 18, 1972, without any further acceptance in writing. In addition, it is urged that the same land, the same parties and substantially the same conditions as allegedly produced in response to the March 18, 1972, letter, obtained in the ultimate transaction through North Eastern Enterprises, Inc. Appellant therefore argues that Dr. Emenhiser received the benefits of the purported contract and cannot avoid performance, citing *Hadley* v. *Keys* (1951), 121 Ind. App. 112, 98 N.E.2d 237.

Appellee responds that Gerardot was unable to effectuate a sale between Maciejko and Dr. Emenhiser. Instead it is argued that Zehr through a complicated land trade involving the Westricks as second sellers of farmland in conjunction with Maciejko and North Eastern Enterprises, Inc., so substantially changed the transaction that Gerardot could claim no credit for partial performance.

Generally a broker has burden of proving not only that he had a written contract but also that his services thereunder were the essential cause of the sale for which he claims a commission. *Conley* v. *Brummit* (1931), 92 Ind. App. 620, 176 N.E. 880; *In re Yellow Transit Freight Lines* (7th Cir. 1953), 207 F.2d 602. Even if a real estate broker has the exclusive right to sell real estate and that right is breached and the broker fails to find an able and willing buyer before his contract expires, his remedy is only resulting damages of expenses incurred. *Brown* v. *Maris* (1958), 128 Ind. App. 671, 150 N.E.2d 760 (transfer denied). In order to recover a commission under the terms of a written contract for the sale of realty a broker is required to prove either an actual sale and transfer of described property or that he procured a purchaser who was ready, willing and able to purchase property on terms specified in the contract or that through the broker's procurement a third party had entered into a valid executory contract with venders for the purchase of such property. *Bastow* v. *Knotts et al.* (1956),

126 Ind. App. 152, 131 N.E.2d 155; *Platt* v. *Johr* (1894), 9 Ind. App. 58, 36 N.E. 294. Moreover when no written contract exists between broker and seller there can be no recovery on a theory of partial performance or *quantum meruit*. *Voelkel* v. *Berry, supra* (1966), 139 Ind. App. 267, 218 N.E. 2d 924.

In the case at bar there is no showing that Gerardot brought all the parties together necessary for the sale of the Emenhiser farm. The owners conveyed their farm to North Eastern Enterprises, Inc. by a deed dated May 13, 1974, and recorded July 10, 1974. The Westricks conveyed their farms of 59 acres and 160 acres to North Eastern Enterprises, Inc. Thereafter North Eastern Enterprises, Inc. conveyed both the Emenhiser farm comprising 239.5 acres and the Westrick farms comprising 219 acres for a total of 458.5 acres to Martin P. Maciejko in exchange for his 154 acre farm near Fort Wayne, Indiana. The Emenhisers never actually sold to Maciejko and Gerardot never actually induced Maciejko to make an offer to Emenhisers.

Without a specific listing agreement or written contract and without having produced a willing buyer, Gerardot cannot properly obtain a commission. Appellant's desire to draw support from *Doney* v. *Laughlin* (1911), 50 Ind. App. 38, 94 N.E. 1027 (transfer denied), is not relevant to the facts herein.

In *Doney* an oral contract for a commission on the sale of real estate was acted upon. The seller had already paid $100. Thereafter the seller duly executed his obligation in writing. When the seller refused to pay the remaining portion of the commission the court held the seller liable for the fee since there had been compliance with the statutory requirement for a writing and the seller had recieved the benefits of the contract.

In *Doney* a written agreement for the payment of the commission served as the basis of the claim. Additionally the broker had been instrumental in bringing the parties together

and arranging the transaction. Neither of these elements obtain to the facts herein.

In the case at bar the broker was not the catalyst in getting Maciejko to sell his valuable farmland. Mr. Zuber had tried. Joseph Zehr had tried for several years and the Eisenbarger real estate agency with whom Gerardot had been associated had attempted to interest Maciejko in selling his land. Mr. Zehr through North Eastern Enterprises, Inc. was the person who finally provided a package deal acceptable to Maciejko. Thus the broker Gerardot did not actually find the buyer for the Emenhiser farm. Providing a telephone number or a contract was less than compelling proof of having brought the buyer and seller together particularly where, as here, a multiparty transaction was required to affect the sale. *See generally, Shelton* v. *Lundin* (1910), 45 Ind. App. 172, 90 N.E. 387.

Moreover the eventual buyer was not the owner's buyer. Unlike *Barnett* v. *Gluting et al.* (1891), 3 Ind. App. 415, 29 N.E. 154, wherein the buyer-bank furnished the money and bought land for its building through one of its tellers, Dr. Emenhiser did not through some subterfuge sell to Maciejko. Gerardot tried to satisfy Maciejko by the simple sale of the Emenhiser property for $175,000. The offer was never accepted by Maciejko. Only the Emenhiser farm in combination with the Westrick farms was suitable for Maciejko's purposes. Thus the land sold to Maciejko by North Eastern Enterprises, Inc. was not identical to that offered by Gerardot.

In addition the parties were not the same. The Emenhisers sold to North Eastern Enterprises, Inc. which changed the property package increasing its combined value by making it acceptable to Maciejko in exchange for his land near Fort Wayne, Indiana.

In consideration of the foregoing it is clear that ample evidence was presented to support the judgment of the trial court. While some elements of such evidence may have been

in dispute it is not this court's function to weigh the same or weigh the credibility of those who offer it. *Gates et al.* v. *Petri, supra.*

The burden is on the appellant to show that the decision of the trial court was contrary to law. A decision against one with the burden of proof is a negative decision against him and may not be attacked on grounds there is a lack of sufficient evidence to sustain it. It is only where the evidence is without conflict and leads to only one conclusion and the trial court reached a contrary one that the decision will be reversed as contrary to law. *Senst* v. *Bradley* (1971), 150 Ind. App. 113, 275 N.E.2d 573; *Bastow* v. *Knotts et al., supra.*

Appellant Gerardot having shown no reversible error, the judgment of the trial court must be affirmed.

Judgment affirmed.

Staton, P.J., concurs; Garrard, J., concurs in result.

NOTE.—Reported at 363 N.E.2d 1072.