**Christ T. PANOS, Appellant**
**(Defendant Below),**

v.

**James R. PRENTISS, Appellee**
**(Plaintiff Below).**

**No. 3–483A121.**

Court of Appeals of Indiana,
Third District.

March 22, 1984.

Rehearing Denied May 3, 1984.

&#x229E;63(1)

J. Patrick Smith, Smith & Smith, La-Porte, for appellant.

STATON, Presiding Judge.

James Prentiss (James) sued Christ Panos to enforce payment of his broker's commission for his and his father's (Richard) efforts to purchase certain property for Panos. The trial court entered a general judgment in favor of the Prentisses. Panos appeals and contends that the Prentiss' failure to fulfill a condition precedent of their oral contract nullified his duty to pay Prentiss.

Affirmed.

■ A general judgment is presumed to be based upon findings supported by the evidence; we must affirm the judgment on any legal theory. *Wilson v. Upchurch* (1981), Ind.App., 425 N.E.2d 236, 238. Therefore, this Court does not weigh the evidence or judge the credibility of witnesses. *Gerardot v. Emenhiser* (1977), 173 Ind.App. 353, 363, 363 N.E.2d 1072, 1078.[1]

The facts most favorable to the judgment are as follows: In October of 1979, Richard worked for his son, James, a real estate broker. Panos asked Richard if he could arrange for him a purchase of property from Ben Dalton. Without specifying terms which Richard was to obtain in his negotiations with Dalton, Panos agreed to pay Richard a commission of 3% of the purchase price. During Richard's initial meeting with Dalton, Dalton lowered his price from $250,000 to $225,000. A subsequent meeting between Richard and Panos was fruitless; all negotiations stopped. In the spring of 1980, Panos requested that Richard resume negotiations with Dalton and confirmed the commission fee of 3% of the purchase price. Richard reopened negotiations with Dalton in September of 1980 when Panos was financially able to purchase Dalton's property. He offered Dalton $190,000. Dalton lowered his price from $225,000 to $210,000 and indicated that he would accept $200,000. When Richard reported this progress to Panos, Panos agreed to let Richard offer Dalton $195,000 in hopes of getting him to sell for $200,000. Subsequently, the three men met (the first meeting) to resolve the $5000 difference between the offer and the requested price. They finally accepted Richard's suggestion to split the difference and his offer to charge $1000 less on his 3% commission. Therefore, the price to which Panos and Dalton agreed was $197,500 and $5000 to Richard. The bulk of the evidence shows that during this first meeting Richard was able to successfully negotiate a mutually satisfying purchase agreement. All terms agreed, Panos instructed Richard to prepare the purchase agreement. Because Richard was out of town, James prepared the agreement and delivered it to Panos. Panos's attorney changed the terms of the purchase agreement which Dalton refused to accept. Later at a second meeting, Panos, Dalton, their attorneys, and Richard met to settle the terms disputed. This second meeting adjourned in complete agreement of the terms, but when the agreement was reduced to writing, it did not correspond to agreements made during the meeting. Moreover, Panos reneged on the purchase. After James notified Dalton that Panos was no longer an interested purchaser, he left town for awhile. When he returned, James discovered that Panos had purchased Dalton's property for $202,500. Panos refused to pay James his broker's commission for his and his father's efforts to purchase Dalton's property.

---

1. The standard of review which accompanies a case where the appellee fails to file a brief makes no difference in our disposition of this case. *See Day v. West* (1978), 176 Ind.App. 15, 16, 373 N.E.2d 935, 937.

## I.

### Condition Precedent

Panos contends that the Prentiss' failure to fulfill a condition precedent in his oral contract employing Richard to arrange his purchase of Dalton's property relieved him of his duty to pay the broker's commission. He asserts that he promised to pay Richard $5000 if Richard could persuade Dalton to sell his property for $197,500 or less. Because the actual purchase price was raised to $202,500 Panos asserts that the condition precedent was never fulfilled.

■ Although we honor conditions precedent, the evidence overwhelmingly reveals that no such condition existed. Richard testified that Panos did not condition his commission on any specified purchase price but instead promised to pay Richard 3% of the total purchase price. This testimony was bolstered by Richard's and Dalton's testimony that after several months of negotiation the figure of $197,500 was a suggested compromise when Dalton and Panos were stalemated between Panos's offer of $195,000 and Dalton's sale price of $200,000. The evidence shows that the commission figure of $5000 was first determined as part of Richard's suggested compromise. Thus, this evidence fails to reveal any condition upon which Richard's commission depended.

## II.

### Sufficiency

■ The statute of frauds specifically requires all employment contracts for the sale of real estate between real estate owners and their brokers to be in writing. IC 1980, 32–2–2–1 (Burns Code Ed.). There is no similar requirement for employment contracts between real estate purchasers and their brokers. *Clark v. Ward* (1947), 117 Ind.App. 307, 313, 70 N.E.2d 755, 756–57; *Pierson v. Donham* (1914), 55 Ind.App. 636, 637–38, 104 N.E. 606, 607. Therefore, the statute of frauds is inapplicable to employment contracts between real estate purchasers and their brokers. However, all other general principles which govern broker's employment contracts apply. *Cline v. Rodabaugh* (1931), 97 Ind.App. 258, 281, 179 N.E. 6, 15. Generally, a broker's right to compensation accrues upon completion of negotiations and upon the meeting of the minds of the principal and the customer procured, but unless otherwise provided, it is not dependent on the final consummation of the sale contract. *Wilson, supra* at 238; *Marotta v. Iroquois Realty Co.* (1980), Ind.App., 412 N.E.2d 797, 801. *Day, supra* 373 N.E.2d at 939–40.

■ Where no purchase agreement has been consummated, a broker is entitled to his commission if he proves that he had secured a customer who was ready, willing, and able to sell or purchase the property upon the terms listed by the principal and the principal refused to complete the transaction. *Wilson, supra* at 238. *Day, supra* 373 N.E.2d at 939–40. The record reveals that even though the purchase agreement prepared through Richard's efforts was never consummated, Richard had secured a ready, willing, and able seller who had agreed to accept from Panos $197,500. It was Panos who changed the terms twice and then backed out of the agreement altogether before he purchased Dalton's property for $202,500.

The evidence reveals that after much skillful negotiation, Richard was able to obtain for Panos and Dalton a mutually satisfying purchase agreement. When the parties agreed to the purchase price of $197,500, they shook hands and Panos directed Richard to prepare the agreement. The purchase agreement was never consummated because Panos's attorney changed the terms. After he changed the terms a second time Panos refused to complete the transaction because he was interested in other property not owned by Dalton. Once Panos had agreed to all the terms which were accepted by Dalton, Richard had fulfilled his obligation to Panos to arrange a purchase of Dalton's property. Panos's repeated refusals to complete the transaction which he and Dalton had agreed to accept will not serve to re-

lieve him from his duty to pay the Prentisses their broker's commission. *Wilson, supra; See Bellman v. Hensel* (1979), 181 Ind.App. 272, 391 N.E.2d 671, 673. *Day, supra.* The Prentisses were entitled to their broker's commission of $5000.

Affirmed.

GARRARD and HOFFMAN, JJ., concur.