**METROPOLITAN REAL ESTATE CORP., Edward L. Frickey, Jr. and Charles Coffman, Appellants (Plaintiffs Below),**

v.

**Jerry W. FREY and Janice L. Frey, Appellees (Defendants Below).**

No. 2–284 A 61.

Court of Appeals of Indiana, Second District.

July 17, 1985.

Rehearing Denied Aug. 12, 1985.

Harold E. Amstutz, Lafayette, for appellants.

James E. Huffer, Obear, Overholser, Smith & Huffer, Delphi, for appellees.

SULLIVAN, Judge.

Metropolitan Real Estate Corporation, Edward L. Frickey, Jr. and Charles Coffman (collectively "Brokers"), appeal the Trial Rule 41(B)[1] involuntary dismissal of their claim for a real estate commission and the order directing the Brokers to return a $5,000 retainer and commission deposit

1. Indiana Rules of Procedure.

paid by Jerry W. and Janice L. Frey ("Freys").

The issues presented are combined and rephrased as follows:

(1) Whether the agency relationship existed between Brokers and Freys so as to entitle Brokers to a commission, notwithstanding expiration of a written exclusive agency agreement.

(2) Whether the trial court erred in permitting the filing of Freys' counterclaim which resulted in the affirmative relief granted to Freys.

(3) Whether the Freys were entitled to return of the $5,000 deposit.

In determining the merits of the Motion for Involuntary Dismissal, it was within the trial court's prerogative to weigh the conflicting evidence. Ind.Rules of Procedure, Trial Rule 41(B) effective January 1, 1982. Pursuant to Trial Rule 52(A), the Court entered extensive findings in support of its judgment.

The evidence was as follows: During August, 1980, the Freys contacted Edward L. Frickey ("Frickey") and requested his assistance in preparing an offer to purchase farm property owned by the Kerkhoffs. Frickey was a licensed real estate broker employed by Metropolitan Real Estate Corporation. The Freys and Frickey executed an Exclusive Agency Agreement ("Agreement"), for the period of August 20, 1980, through September 20, 1980. The terms of the Agreement as prepared by the Brokers were not limited to the purchase of the Kerkhoff farm but provided that the Brokers would act as agents for the Freys in locating suitable real estate to be purchased by the Freys. The Freys in turn agreed to pay a five percent commission on the gross purchase price of the property procured by the Brokers. The sum of $5,000 deposited with the Brokers was to be used as "earnest money" on the offer to purchase negotiated by the Brokers or was to be credited toward the amount of commission, if any, earned by the Brokers. However, the deposit was to be returned in

full to the Freys "[i]n the event the said Broker fails to earn the commission under the terms of this agreement during the existence of this contract." Agreement, *Record* at 58.

On Freys' behalf, the Brokers prepared and presented an offer to purchase to the sellers of the farm property (Kerkhoffs) on August 20, 1980. The offer to purchase was neither formally accepted nor rejected by the Kerkhoffs *within the term* of the Agreement. The offer to purchase expired by its own terms on September 1, 1980. Brokers did not negotiate or prepare a subsequent offer to purchase the Kerkhoff farm or any other farm property. However, Brokers testified they consulted with both Kerkhoffs and Freys after September 20, 1980, about sale of the Kerkhoff farm.

In December, 1980, the Freys executed a final sales contract for the purchase of the Kerkhoff farm, apparently without the Brokers' knowledge or involvement. The Brokers filed their complaint on May 20, 1981, seeking payment of the five percent commission allegedly due on the sale and a declaration that they were entitled to retain the $5,000 deposited by the Freys. The Freys counterclaimed on June 23, 1981, alleging that the Brokers had not performed within the terms of the Agreement and seeking the return of their $5,000 deposit. The trial court entered judgment for Freys upon their counterclaim, and this appeal followed.

■ At the outset, it should be noted that although Freys have filed a brief with this court, the brief contains nothing more than a lengthy recitation of facts favorable to the Freys. No relevant authority is cited nor is any argument advanced to support the legal theory of the judgment. *See* Ind.Rules of Appellate Procedure, Appellate Rule 8.3. We, therefore, conduct our review as if no appellee's brief had been filed. Brokers need only demonstrate *prima facie* reversible error to prevail. *Arsenal Savings Association v. Westfield Lighting Co., Inc.* (1984) 4th Dist., Ind. App., 471 N.E.2d 322, 325.

## I.

The Brokers first assert that the trial judge erred in determining that the Brokers were not entitled to receive their commission pursuant to the Agreement. Brokers allege they continued their efforts to secure acceptance of the Freys' offer on the Kerkhoff farm beyond September 20, 1980, the expiration date of the Agreement. Brokers maintain that these efforts, and the fact that the Freys did not advise Brokers their services were no longer required, constituted an extension of the agency relationship beyond the term stated in the Agreement. Thus they argue the December purchase of the Kerkhoff farm entitled Brokers to receive the five percent commission pursuant to the terms of the Agreement.

■ The existence of an agency relationship unsupported by a written agreement is a question of fact to be resolved by the trier of fact. *See State v. Halladay* (1978) 2d Dist., 176 Ind.App. 43, 374 N.E.2d 51. The trial court found that the only agency agreement between the parties was embodied in the Agreement of August 20, 1980, and that there was no extension or continuation of the agency relationship past September 20, 1980. The trial court's finding in this respect is supported by the evidence. Freys testified that they negotiated with Brokers for an agency agreement of limited duration. There was evidence Freys wanted the purchase completed prior to the fall planting season. The offer to purchase was itself conditioned upon closing being held on or before November 15, 1980, and possession being complete in the fall of 1980. Brokers have not shown that the trial court's findings in this respect were clearly erroneous. Although Brokers assert otherwise, the trial court was entitled to conclude that there was no agency relationship between the parties beyond the term specified in the Agreement.

Brokers additionally assert that notwithstanding the expiration of the agency agreement, they earned their commission because the purchase was directly attribut-

able to their efforts on behalf of Freys. In *Panos v. Prentiss* (1984) 3d Dist., Ind.App., 460 N.E.2d 1014, 1016, this court concluded that, with the exception of the statute of frauds,[2] "all other general principles which govern broker's employment contracts apply." In *Panos*, the broker, who represented the purchaser, had extensively negotiated and obtained a purchase agreement mutually satisfactory to both buyer and seller; however, the buyer repeatedly refused to complete the transaction. The Court of Appeals held the broker was entitled to his commission as he had "secured a customer who was ready, willing, and able to sell or purchase the property upon the terms listed by the principal[.]" *Id. See also Abex Corporation v. Vehling* (1983) 2d Dist., Ind.App., 443 N.E.2d 1248, 1255 ("[I]f the broker cannot prove that he had effected a sale of the property, he may recover his commission if he can prove either that he had secured a buyer ready, willing and able to purchase property according to the terms listed by the seller or that by and through his procurement, a third party had entered into a valid executory contract ... for the purchase of the property.") In the case at hand, the trial court found that the Freys' purchase of the Kerkhoff farm was not attributable to Brokers' efforts. This finding will not be set aside unless clearly erroneous.

The Brokers testified that they contacted the Freys and the Kerkhoffs on several occasions after the expiration of the Agreement attempting to settle the negotiations, and were never informed their services were no longer required. In addition, Brokers emphasize that the Purchase Agreement presented to the Kerkhoffs was neither accepted nor rejected by the sellers. This evidence, they contend, is proof that, notwithstanding the limited duration of the written Agreement, the Freys' purchase of the Kerkhoff farm was the direct result of the Brokers' efforts.

■ The testimony on this issue was conflicting and susceptible of different interpretations. The trial court was not required to and clearly did not agree with the Brokers' interpretation because it specifically found that the ultimate sale was not the result of the Brokers' efforts but rather the result of independent negotiations between the Kerkhoffs and Freys.

The evidence in support of the finding is substantial. The Freys testified that they negotiated with the Brokers for a short-term agreement and never agreed to be bound beyond its expiration date. The purchase agreement upon which Brokers place much reliance to support their claim that they were acting pursuant to an existing offer, expired by its own terms on September 1, 1980. In addition, the Freys presented evidence of the terms of the final sales contract, which were substantially different from those contained in the original offer. These terms were negotiated between Freys and Kerkhoffs without the Brokers' assistance.

For example, the final purchase price was higher than originally offered and the down payment was increased by $50,000. Also, the scheduled number of payments was reduced from ten to six, with a corresponding increase in the amount of each payment. Possession of the property did not occur in the fall of 1980 as originally requested by the Freys. The Kerkhoffs' refusal to accept the originally proposed terms cannot reasonably be charged against Freys, absent evidence of collusion between buyer and seller to avoid payment of the Brokers' commission.

■ Although a different trier of fact might have concluded otherwise on these same facts, it is not the prerogative of this court to substitute its judgment for that of the trial court. *See Evans v. National Life Accident Insurance Co.* (1984) 2d Dist., Ind.App., 467 N.E.2d 1216. The trial court's findings herein are sufficiently supported by the evidence of record.

II.

Brokers next assert that the Freys' counterclaim was not timely filed in accordance

2. I.C. 32–2–2–1 (Burns Code Ed.Repl.1980).

with Indiana Rules of Procedure, Trial Rule 13. The counterclaim was filed as an independent pleading approximately one month after the filing of the complaint. The record reflects that the trial court subsequently granted Freys' oral motion for leave to file or refile the counterclaim as of August 30, 1983, the date of trial.

Despite Brokers' assertion that the counterclaim was filed after the filing of defendants' answer, the record does not contain such answer nor an order book entry disclosing that any such answer was filed prior to the filing of the counterclaim. There is some hint of record that prior to the filing of the counterclaim defendants may have filed a "Motion to Dismiss or for Summary Judgment"; but again such pleading, if any, is not of record nor is there any indication of the date of such filing.

■ In any event we hold that the trial court acted within its discretion in considering the defendants' counterclaim.

Trial Rule 13(A) states, in pertinent part: "(A) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."

Because there is no dispute that Freys' counterclaim was compulsory, the only question presented is whether T.R. 13 mandates that a counterclaim be included in the first responsive pleading of the party asserting the counterclaim. The term "pleadings" is defined as, (1) a complaint and an answer; (2) a reply to a denominated counterclaim; (3) an answer to a cross-claim; (4) a third-party complaint, and (5) a third-party answer. Trial Rule 7(A). Thus, a strict interpretation of the language of T.R. 13(A) indicates that a counterclaim should be contained in the defendant's answer, which is the only contemplated responsive pleading to the complaint. However, we do not agree with Brokers' contention that failure to include a compulsory counterclaim in the first responsive pleading necessarily precludes a judgment on a later-filed counterclaim.

Trial Rule 13(F) provides:

"When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment."

It indicates that consideration of a belated counterclaim is committed to the sound discretion of the trial court under the circumstances therein prescribed. Furthermore, the only cases found which bar a counterclaim under T.R. 13 deal with such a counterclaim in a subsequent action between the parties. *Middlekamp v. Hanewich* (1977) 3d Dist., 173 Ind.App. 571, 364 N.E.2d 1024. *See also Daube and Cord v. LaPorte County Farm Bureau Co-Operative Association* (1983) 3d Dist., Ind.App., 454 N.E.2d 891; *Brademas v. Carriage House of Mishawaka II* (1980) 3d Dist., Ind.App., 413 N.E.2d 991. We find no Indiana case which forbids the filing of a counterclaim in the same proceeding after the first responsive pleading. We do note, however, that some cases discuss the maturity of permissive vis-a-vis compulsory counterclaims with reference to time of the filing of the first answer. *Indiana & Michigan Electric Co. v. Terre Haute Industries, Inc.* (1984) 1st Dist., Ind.App., 467 N.E.2d 37; *Berkemeier v. Rushville National Bank* (1984) 1st Dist., Ind.App., 459 N.E.2d 1194; *Rees v. Panhandle Eastern Pipe Line Co.* (1983) 3d Dist., Ind.App., 452 N.E.2d 405; *Whipple v. Dickey* (1980) 3d Dist., Ind.App., 401 N.E.2d 787.

As noted in *Daube and Cord v. LaPorte County Farm Bureau Co-op., supra,* 454 N.E.2d 891, a compulsory counterclaim is not barred unless the first action has proceeded to judgment. This holding does not indicate any intent to absolutely bar the filing of a compulsory counterclaim between the time of the filing of the first responsive pleading and the entry of judgment.

Sections (a) and (f) of Fed.R.Civ.P., Rule 13 are identical with our like provisions. As noted in 6 C. Wright & A. Miller, *Federal Practice and Procedure:* Civil § 1430, at p. 155 (1971):

"[S]ince the decision whether to allow the counterclaim to be pleaded is a matter of judicial discretion, it can be reversed on appeal only if the party can demonstrate that the court abused its discretion."

T.R. 13(F) is not restricted to permissive counterclaims. To the contrary, it has been observed that

"when the omitted counterclaim is compulsory, the reasons for allowing its introduction by amendment become even more persuasive, since an omitted compulsory counterclaim cannot be asserted in subsequent cases (at least in the federal courts) and the pleader will lose his opportunity to have the claim adjudicated." Wright & Miller, *supra,* Civil § 1430 at 158.

Neither are we persuaded by Brokers' position that Freys' failure to seek a formal amendment of a prior pleading in order to file the counterclaim is fatal. To adopt that argument would be to elevate form over substance and seriously interfere with an appropriate exercise of the trial court's discretion.

We, therefore, hold that if plaintiff is not prejudiced in the preparation of a defense against it, a compulsory counterclaim may be filed with leave of court after filing defendant's first responsive pleading.

### III.

The Brokers also challenge the finding that the Freys were not unjustly enriched by Brokers' efforts on their behalf, and the order requiring the Brokers to return the $5,000 retainer-deposit. This order was entered pursuant to the Freys' counterclaim, already held to have been properly interposed in this dispute. The trial court was entitled to consider the evidence presented on the complaint in determining the issues raised by the counterclaim. The court determined that the Brokers were not entitled to a commission, or any portion thereof.

■ Although the Brokers expended considerable time and effort on behalf of the Freys, absent a contractual agency relationship,[3] such expenditures are not compensable on a theory of *quantum meruit. See Gerardot v. Emenhiser* (1977) 3d Dist., 173 Ind.App. 353, 363 N.E.2d 1072, 1077. Instead, any entitlement to a commission is strictly limited by the terms of the contract. The Agreement between the Freys and the Brokers provided in pertinent part:

"A. In the event that said Broker fails to earn the commission under the terms of this agreement *during the existence of this contract* the said deposit and retainer shall be returned to the Buyer in full." Record at 58. (Emphasis supplied).

Clearly the parties did not contemplate that any commission would be forthcoming unless the Brokers procured a willing seller of suitable real estate during the existence of the Agreement.

■ The trial court judge found that the Brokers failed to fulfill this essential condition of the Agreement. The evidence in support of this finding indicates that the Freys were willing and able to buy the farm throughout the duration of the Agreement. It was the Kerkhoffs who refused to sell under the terms of the original offer prepared by the Brokers and all delays were occasioned by the Kerkhoffs. Although the Brokers testified that they were led to believe the Freys wanted the agency relationship to continue, they admitted that the final agreement was negotiated without their assistance. Brokers also testified that the Freys never specifically authorized the Brokers to continue the agency. There was ample evidence to support the finding that the Brokers did not secure "a customer who was ready, willing, and able to sell or purchase the property ..." during the

---

**3.** Unlike listing agreements between sellers and brokers covered by I.C. 32–2–2–1 (Burns Code Ed.Repl.1980), such agreements between buyers and brokers are not required to be in writing. *Panos v. Prentiss, supra,* 460 N.E.2d 1014.

existence of the Agreement. Such was a condition precedent to the entitlement of a commission. *Sutton v. Roth, Wehrly, Heiny, Inc.* (1981) 3d Dist., Ind.App., 418 N.E.2d 229. In accordance with the terms of the Agreement, the Freys were entitled to a refund of the retainer-deposit.

The trial court's judgment is affirmed.

BUCHANAN, C.J., and SHIELDS, J., concur.