**William O. CRIDER, Eagle Developments, Inc., and Eagle Manufacturing Industries, Inc., Appellants (Defendants Below),**

v.

**The STATE EXCHANGE BANK OF CULVER, Indiana, Appellee (Plaintiff Below).**

**No. 2–284–A–54.**

Court of Appeals of Indiana, Second District.

Jan. 28, 1986.

Rehearing Denied Feb. 21, 1986.

Robert E. Poynter, Jill A.H. Andersen, Bennett, Boehning, Poynter & Clary, Lafayette, for appellants.

John K. McBride, Jeffrey J. Newell, Ball, Eggleston, Bumbleburg & McBride, Lafayette, for appellee.

SULLIVAN, Judge.

William O. Crider, Eagle Developments, Inc., and Eagle Manufacturing Industries, Inc. (collectively "Crider"), appeal the trial court's denial of their motion for leave to file three supplemental counterclaims.

Crider presents two issues on appeal, restated as follows:

(1) Whether the trial court erred in refusing to allow Crider's supplemental counterclaims of failure of consideration, breach of contract and fraud.

(2) Whether a pattern of fraud perpetrated upon bank customers, and newly discovered by Crider, constitutes a new theory of recovery which would negate the validity of the instruments upon which the foreclosure decree was based and which could not, with reasonable diligence, have been discovered and produced at trial.

We affirm in part and reverse in part.

William O. Crider owned a hobby kit manufacturing business and was the sole shareholder of Eagle Developments, Inc. and Eagle Manufacturing Industries, Inc. On September 1, 1977, Crider executed a

note to Appellee, The State Exchange Bank of Culver (Bank) for $85,159.03 along with security agreements with respect to accounts receivable, inventory, machinery and equipment. On November 5, 1977, Crider executed mortgages in the amount of $150,000 on three parcels of real estate as additional security for the note and for possible future indebtedness.[1] Subsequently, on June 29, 1979, Crider executed another promissory note to the Bank for $15,600.

Crider became in default and on April 25, 1980, the Bank filed suit to collect $81,276.04 on the first note, $15,600 on the second note, and to foreclose the mortgage. Crider filed an answer with a set-off and a two-count counterclaim for trespass and forcible entry.[2] Crider also demanded a jury trial. At the pre-trial conference the court determined that the issues raised by the complaint, answer and set-off would be tried to the bench, with a jury trial on Crider's counterclaim to follow later.

On March 2, 1981, after a bench trial in which the dispute focused upon whether the Bank, by acceptance of previous delinquent payments, was estopped, and whether the fees and insurance premiums were excessive, the court entered findings in favor of the Bank. However, entry of judgment was withheld pending the resolution of Crider's original two-count counterclaim.[3] Crider filed a bankruptcy petition on January 14, 1982, which stayed proceedings. On June 2, 1983, the bankruptcy court granted the Bank's request to lift the automatic stay. On June 29, 1983, at a hearing to select a date for the jury trial on Crider's counterclaims, Crider moved for leave to file supplemental counterclaims based upon failure of consideration, breach of contract and fraud.

Several months after the court denied Crider's motion, the parties entered into an agreement which provided for dismissal of Crider's original counterclaims with prejudice but expressly preserved his right to appeal denial of leave to file the supplemental counterclaims. The agreement also allowed the entry of judgment upon the court's order of March 2, 1981, in the amount of $141,343 including interest. In addition, the judgment provided for foreclosure and sale of the collateral named in the three security agreements and for foreclosure and sale of the three parcels of real estate mortgaged by Crider to the Bank.

On the eve of the sheriff's sale, Crider again filed a bankruptcy petition and was granted an automatic stay, but an order for relief of stay was immediately obtained by agreement of the parties, allowing a sheriff's sale as to the real estate only. After this sale, the Bank was left with a deficiency in excess of $68,000.

On December 14, 1983, Crider filed an affidavit alleging newly-discovered evidence and a motion to correct errors.

## SUPPLEMENTAL COUNTERCLAIMS

Crider asserts that the trial court's refusal to permit the filing of his three supplemental counterclaims, based respectively upon the theories of failure of consideration, breach of contract and fraud, constituted an abuse of discretion. All three counterclaims are based upon the same underlying facts; namely, that the Bank promised to make available to Crider a line of credit of no less than $150,000; that Crider executed promissory notes, mortgages on real estate and security agreements on personal property in reliance upon this promise; and that the Bank failed to advance the amount promised, but

---

1. It is Crider's position that the Bank agreed to extend a $150,000 line of credit.

2. These original counterclaims asserted that the Bank wrongfully entered the mortgaged property and changed the locks. The set-off was premised upon a claim of excessive loan fees and insurance premiums.

3. The trial court findings indicate that Crider's failure to keep the collateral insured was the issue upon which the court based its determination in favor of the Bank.

advanced only approximately $85,000, thereby causing damages to Crider.

He argues that his failure of consideration counterclaim and his breach of contract counterclaim are both compulsory counterclaims and that the court was required to permit their filing pursuant to Trial Rule 13(A) and (F). He asserts that his fraud counterclaim was "after-acquired" and should have been accepted pursuant to Trial Rule 13(E).

### (A) FAILURE OF CONSIDERATION

It is well-established that failure of consideration is strictly a defense. Ind. Rules of Procedure, Trial Rule 8(C) provides in pertinent part:

"Affirmative defenses. A responsive pleading shall set forth affirmatively and carry the burden of proving: Accord and satisfaction, arbitration and award, discharge in bankruptcy, duress, estoppel, *failure of consideration,* fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, lack of jurisdiction over the subject-matter, lack of jurisdiction over the person, improper venue, insufficiency of process or service of process, the same action pending in another state court of this state, and any other matter constituting an avoidance, matter of abatement, or affirmative defense. A party required to affirmatively plead any matters, including matters formerly required to be pleaded affirmatively by reply, shall have the burden of proving such matters." (Emphasis supplied).

Failure of consideration is also set forth as a defense in I.C. 26-1-3-306:

"Rights of one not holder in due course. —Unless he has the rights of a holder in due course any person takes the instrument subject to

(a) all valid claims to it on the part of any person; and

(b) all defenses of any party which would be available in an action on a simple contract; and

(c) *the defenses of want or failure of consideration,* nonperformance of any condition precedent, nondelivery, or delivery for a special purpose...." (emphasis supplied)

and in I.C. 26-1-3-408:

"Consideration.—Want or failure of consideration is a defense as against any person not having the rights of a holder in due course (section 26-1-3-305), except that no consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind...."

(Burns Code Ed.1974). *See also Kelley, Glover & Vale v. Heitman* (1942) 220 Ind. 625, 44 N.E.2d 981.

■ To properly preserve an affirmative defense, the party with the burden of proving it must either have set it forth in a responsive pleading or have litigated it by consent of the parties. Otherwise, the issue is waived on appeal. *Lafary v. Lafary* (1985) 4th Dist.Ind.App., 476 N.E.2d 155, 159; *Kwikie Minit Markets, Inc. v. Hutner* (1973) 155 Ind.App. 307, 292 N.E.2d 832.

■ In the instant case, Crider had the burden of pleading and proving the affirmative defense of failure of consideration at the time of the original action. He did not meet this burden and he may not successfully argue reversal upon this issue.

■ It is true that a pleading may be amended to add a belated affirmative defense. *Indiana Dept. of Public Welfare v. Clark* (1985) 1st Dist.Ind.App., 478 N.E.2d 699. However, the leave to do so rests within the sound discretion of the trial court. *Id.* at 703.

In the case before us, no attempt was made to inject the failure of consideration theory until after the merits of the Bank's complaint had been resolved against Crider. The attempted supplemental counterclaim came too late. There was no error in rejecting it.

## (B) BREACH OF CONTRACT

In his breach of contract counterclaim, Crider sets forth the same basic underlying facts, i.e., failure to advance the full line of credit. In addition, however, he asserts that the existence of the security interest against his property dried up alternative credit sources and that he lost substantial business income as a result.

The Bank's complaint sought to recover only for the unpaid amount of the credit actually advanced. Crider's claim concerning the unadvanced credit constitutes a separate and distinct claim cognizable without regard to the basic suit by the Bank against him even though it arose out of the transaction upon which the Bank filed suit. *See Eby v. York Division, Borg-Warner Corp.* (1983) 4th Dist.Ind.App., 455 N.E.2d 623.

As required by Trial Rule 13(A), a compulsory counterclaim must be stated at the first opportunity if it exists at the time the plaintiff's complaint is served and if it arises out of the transaction or occurrence which is the subject matter of the plaintiff's complaint. Quite clearly that is the case with respect to the breach of contract claim. The counterclaim for breach of contract had accrued prior to the time the Bank filed its lawsuit. It was therefore a compulsory counterclaim.

Crider correctly contends that the judicial policy which favors litigation and disposition of all issues together, if possible, is not violated in this instance. The trial court with good reason had bifurcated the resolution of the issues joined by the Bank's complaint and Crider's set-off, as separate and apart from the issues presented by the original counterclaims. The counterclaims in question were tendered while the original counterclaims remained pending and awaiting trial by jury.

The controlling consideration here is that the trial court did not enter any judgment but only made findings and held judgment in abeyance pending trial by jury upon the original counterclaims. Were it otherwise, we might have been persuaded to follow those cases which hold that Trial Rule 13 bars a counterclaim in a subsequent action. *Middelkamp v. Hanewich* (1977) 3d Dist., 173 Ind.App. 571, 364 N.E.2d 1024.[4]

■ A compulsory counterclaim is not barred unless the first action has proceeded to judgment. *Metropolitan Real Estate Corp. v. Frey* (1985) 2d Dist.Ind.App., 480 N.E.2d 267. Furthermore, we are persuaded by the reasoning of *Rees v. Panhandle Eastern Pipe Line Co.* (1983) 3d Dist.Ind.App., 452 N.E.2d 405, when viewed in the light of *Middelkamp v. Hanewich, supra,* 364 N.E.2d 1024, that the trial court should have permitted the filing of the breach of contract counterclaim. Neither the court nor the parties impliedly or explicitly litigated that claim. This is so even though the facts underlying the claim were involved in the litigation which resulted in the finding for the Bank upon its complaint for foreclosure.

In *Metropolitan Real Estate Corp. v. Frey, supra,* 480 N.E.2d 267, we quoted from 6 C. Wright & A. Miller, *Federal Practice & Procedure:* Civil § 1430 at 158 as follows:

" '[W]hen the omitted counterclaim is compulsory, the reasons for allowing its introduction by amendment become even more persuasive, since an omitted compulsory counterclaim cannot be asserted in subsequent cases (at least in the federal courts) and the pleader will lose his opportunity to have the claim adjudicated.' " 480 N.E.2d at 272.

■ Our analysis of the law prompts us to hold that the trial court erred in refusing Crider's breach of contract counterclaim. Our decision in this regard is not, and cannot be, affected by the relative probabilities of his success in asserting that claim.

---

4. *Henry v. Gant* (1921) 75 Ind.App. 218, 129 N.E. 408, is understandably relied upon by Crider. Gant sued for mortgage foreclosure and obtained judgment after Henry had voluntarily dismissed a fraud counterclaim. The Appellate Court held that in a subsequent, independent action, Henry, as plaintiff, was permitted to litigate his fraud claim.

### (C) FRAUD

Crider's fraud counterclaim restates the assertions of the failure of consideration and breach of contract claims. It adds an allegation that from the outset, the Bank never intended to extend the full line of credit.

As earlier observed, Crider does not contend that his fraud claim was a compulsory counterclaim. Upon appeal with respect to this issue, he asserts only that it was tendered as an after-acquired claim. We do not therefore decide the arguable merit of a contention which would categorize the fraud counterclaim as a compulsory counterclaim. Suffice it to say that Crider, with respect to this issue, rests his appeal upon the premise that only by reading newspaper articles did he determine that the Bank had a fraudulent motivation in its dealings with him. In this context it is not surprising that he seeks to label his fraud theory as "after acquired."

Crider may not use investigative newspaper reporting as a belated substitute for discovery. The purpose of discovery is to provide all parties with information essential to the proper litigation of all relevant issues, to eliminate surprise, and to promote settlement. *Coster v. Coster* (1983) 1st Dist.Ind.App., 452 N.E.2d 397, 400, *citing Matter of Hawaii Corporation v. Crossley* (1980) Dist.Ct.Hawaii, 88 F.R.D. 518. The onus was upon Crider to obtain information reasonably calculated to lead to admissible evidence. *See Kaufmann v. Credithrift Financial, Inc.* (1984) 1st Dist.Ind.App., 465 N.E.2d 207, 210. It was incumbent upon Crider to demonstrate that the evidence could not have been earlier discovered by the exercise of due diligence. *Briggs v. Clinton County Bank & Trust Co.* (1983) 2d Dist.Ind.App., 452 N.E.2d 989, 1013. To the extent that there may have been facts of which Crider became aware later, he must suffer the consequences. Failure to pursue available discovery does not transform an unfiled claim into an after-acquired claim.

Crider has not, by the argument presented, demonstrated that the fraud counterclaim was required to be accepted and considered by the trial court.

The ruling and decision of the trial court is affirmed insofar as it refused the filing of supplemental counterclaim Count III (Failure of Consideration) and Count V (Fraud). The ruling and decision is reversed with respect to Count IV (Breach of Contract).

Costs are assessed against the parties as follows: Eighty percent against Appellant Crider and twenty percent against Appellee Bank.

BUCHANAN, C.J., and SHIELDS, J., concur.