Willard McCoy **BORDEN**, Appellant,

v.

**STATE** of Indiana, Appellee.

No. 179S22.

Supreme Court of Indiana.

March 10, 1980.

Harriette Bailey Conn, Public Defender, Ihor N. Boyko, Deputy Public Defender, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Jeff G. Fihn, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

On May 9, 1969, appellant Willard Borden was sentenced to a term of not less than two (2) nor more than twenty-one (21) years for rape and to life imprisonment for kidnapping. After various motions and petitions were filed, permission to file a belated appeal was granted on February 21, 1979. This appeal followed.

Appellant claims error in the allowing of an in-court identification and in the sufficiency of the evidence to sustain his convictions.

The victim, H. F., testified that she delivered newspapers, and that on September 22, 1968, she picked up her newspapers from the South Side Cafe in Bloomington, Indiana. She drove to an all-night laundry where she stuffed the newspapers with the magazine sections and comics. A man, who was later identified as Borden, drove up in a noisy automobile and asked H. F., if she had seen his wife in the laundry. He waited at the laundry and helped H. F., "stuff" newspapers and then helped her load them into her car. After H. F., started her car, he pulled her out of her car and into his car. H. F., screamed, kicked and tried to bite her assailant while trying to escape as he was

driving away. She was pushed down on the front seat and her glasses were knocked off. Her assailant agreed to return them if she stopped yelling. H. F., testified she asked if he were going to kill her. He stated, "No dear, I'm going to make love to you." She tried to talk him out of this, but he threatened to beat her if she gave him any trouble. She stated she finally gave in because she did not want to die. After having intercourse with her, he got out of the car and did something to the back of the car. H. F., was later dropped off at a highway and told to hitchhike back to town. She tried to look at the license plate on the back of her attacker's car but it had been bent down so that she could not read all the numbers. She did, however, see the Lawrence County prefix numbers. H. F., was given a ride back to town in the back of a pick-up truck. She returned to the laundry and called the police.

In the meantime, police had responded to a call made by Vincent Segars, who also delivered newspapers. He had been driving by and had seen H. F., and a man by her car. Soon after he heard a car accelerate noisily as it drove past him at a high rate of speed, and heard a scream. He drove back to the laundry, searched for H. F., unsuccessfully, noticed that the door of her car was open and that the engine was still running. He then telephoned the police. When H. F. returned to the laundry she was taken by police to the Bloomington Police Department, to the scene of the crime and, finally, to her family physician.

Appellant Borden was arrested by Bedford City Police in connection with this incident. A 1959 Buick with a bent license plate was on the premises. Borden was taken to the Lawrence County Jail where he was picked up by Bloomington authorities.

Borden testified as to his activities on September 21, and 22, 1968. He stated that he drove around, stopped at the laundry, talked to H. F., helped her "stuff" newspapers and load her car. He claims she got in his car willingly and drove with him, had intercourse and caught a ride into town because they thought she might get caught by her husband. Borden denied that he had kidnapped and raped H. F.

## I.

Appellant alleges that it was error for the trial court to permit an in-court identification of him, over the objections of trial counsel, after a motion to suppress an illegal pretrial identification had been granted.

Borden had been arrested and placed in the Monroe County Jail. He stood in a hallway with two or three other individuals. Pictures were taken. H. F. had picked out Borden's photograph at the Bedford Police Department. She was positive of her identification. She was shown a single photograph of the appellant from the Seymour Police Department after she had picked out Borden's photograph in the Bedford Police Department. She was then asked to view a line-up and told to nod her head when she decided whether or not her assailant was present, but not to say if he was there, or which person he was. She viewed five or six men, nodded her head, then later told a detective which one she recognized. The court ordered that all evidence obtained by the State at the line-up be suppressed, but that any courtroom identification based on independent observation be allowed.

Appellant claims that the showing of the single photograph and the line-up contributed to the misidentification of appellant at trial, and that these procedures so tainted the in-court identification that it should have been excluded. "A witness who has been subjected to an unnecessarily suggestive confrontation with the accused may nonetheless identify the accused at trial as the perpetrator of the offense if the pre-trial confrontation has not created a "very substantial likelihood of irreparable misidentification," *Norris v. State*, (1976) 265 Ind. 508, 356 N.E.2d 204, or in other words, if the witness has a basis for his in-court identification independent of the suggestive procedure. *Johnson v. State*, (1977) 265 Ind. 689, 359 N.E.2d 525." *Love v. State*, (1977) Ind., 365 N.E.2d 771, 773.

Here, the witness had ample opportunity to observe the appellant. She was with him, "stuffing" newspapers, in a well lighted laundry for some time. Also, she observed him as she was taken from her car, driven out of town, forced to have intercourse and released. For a brief time, her glasses were knocked off, but these glasses were returned and replaced. H. F. gave a detailed description of her assailant, his car and his clothing. She identified him from pictures and stated her thought processes allowed her to identify Borden. The trial court did not err in allowing the in-court identification.

In addition, we note that the appellant himself testified in agreement with most of the facts set out above. He testified concerning his car, clothing, and his presence at the laundry. He testified that he helped "stuff" newspapers, left with H. F., had intercourse with her and dropped her off on the highway. His version of the events differs from that of H. F., in that he denied using force to abduct or rape H. F., and claims that she went with him and had intercourse with him willingly. Thus, it appears clear that the showing of a single photograph and the subsequent line-up did not result in a misidentification of Borden. There is no error on this issue.

## II.

Appellant finally argues that the evidence was insufficient to support the jury's verdicts of rape and kidnapping. Again he argues that the identification evidence was improperly admitted, and that there was insufficient evidence of rape or of the forcible carrying off of H. F.

The issue of the admission of an in-court identification of Borden was discussed in Issue I and found to be without merit.

██ In determining the sufficiency of the evidence, this Court will look only to the evidence most favorable to the State and the reasonable inferences to be drawn therefrom. We will not disturb a verdict if there is substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Deaton v. State*, (1979) Ind., 389 N.E.2d 293. Borden also asserts that the jury should have believed his testimony that H. F., went with him willingly. A jury may believe whomever they choose and disregard the testimony of witnesses they do not believe. *Sypniewski v. State*, (1977) 267 Ind. 224, 368 N.E.2d 1359.

██ In regard to appellant's claim of the insufficiency of the evidence to support the jury's verdict of rape, it is well-settled that a conviction of rape may be on the testimony of the victim alone. *Harris v. State*, (1978) Ind., 373 N.E.2d 149; *Beard v. State*, (1975) 262 Ind. 643, 323 N.E.2d 216.

██ Here, in addition to the testimony of the victim and the other evidence set out previously, testimony was heard from other witnesses that corroborated her version of the incident and that she was forcibly carried off. There was testimony that placed her at the scene with a man and that screams and an accelerating car motor were heard. Her car was found with the keys in it, the motor running and the door open. She was seen crouched in the back of a pickup truck returning to town. A physician examined her and determined that she had had intercourse and although he found no bruises or scratches, he stated that it was common not to discover them. This evidence is sufficient to sustain the convictions. There is, therefore, substantial evidence of probative value to support the conclusion of the triers of fact.

The judgment is affirmed.

All Justices concur.