Alfred DAVIS, Appellant,

v.

STATE of Indiana, Appellee.

No. 682S233.

Supreme Court of Indiana.

Dec. 2, 1983.

William A. Kowalski, Ray L. Szarmach, East Chicago, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was convicted of Murder in the Second Degree, IC § 35–1–54–1 (1971) [Repealed by Acts 1976, P.L. 148, § 24, effective October 1, 1977], in May of 1977. The trial court granted a new trial at the conclusion of a hearing on appellant's Belated Motion to Correct Error. The presiding judge, deputy prosecutor and defense attorney in the first trial all participated in the second trial, at which appellant was again convicted by a jury of Murder in the Second Degree. He received a sentence of imprisonment for not less than fifteen (15) years nor more than twenty-five (25) years.

The facts indicate Link Reed and his younger cousin, John Simington, had visited several nightclubs in the Gary/Hammond area before arriving at the Cadillac Club in East Chicago, Indiana, at approximately 3:00 A.M., on April 5, 1975. The pair went there to gamble. John entered a crowded room where the dice table was located. Link stood in the doorway between the gambling room and the lounge area so he could watch the dancers in that area, and

also keep an eye on his cousin as he gambled.

John approached the crowded dice table and signalled his desire for a playing position by extending his arm between appellant and another player toward the table. Appellant became angry with him, turned around and said, "I don't like anybody standing behind me when I'm gambling." Appellant then shoved him. As the victim was falling backward, appellant drew a pistol and shot him. The victim later died at a hospital following surgical attempts to save his life.

Appellant took the stand in his own behalf and admitted to shooting the victim. He claims, however, that during the brief scuffle, the victim pulled back his coat as though reaching for a gun. He stated he feared for his life, and thus shot the victim in self-defense. However, appellant admitted he saw no gun, that the man did not say he was going to hurt or kill appellant, nor did appellant observe any bulges in the coat. Other witnesses did not view the victim's behavior as threatening toward appellant.

■ ▆▆▆ "Where one has taken the life of another human being, and thereafter contends that he did so in self-defense, he can only be successful in his contention if:

(1) he acted without fault,

(2) he was in a place where he had a right to be, and

(3) he was in real danger of death or great bodily harm, or in such apparent danger as caused him in good faith to fear death or great bodily harm." *King v. State,* (1968) 249 Ind. 699, 705, 234 N.E.2d 465, 468.

*See also* IC § 35–41–3–2 [Burns Supp.1983]. In controverting the self-defense assertion, the State has the burden to disprove one of the above conditions beyond a reasonable doubt. *McCraney v. State,* (1983) Ind., 447 N.E.2d 589; *Palmer v. State,* (1981) Ind., 425 N.E.2d 640. It may meet this burden by rebutting the defense directly; by affirmatively showing appellant did not act in self-defense; or by simply relying upon the sufficiency of its evidence in chief. *Palmer,*

*supra; Harris v. State,* (1978) 269 Ind. 672, 382 N.E.2d 913; *Jennings v. State,* (1974) 262 Ind. 476, 318 N.E.2d 358. Self-defense may not be asserted by one who was the initial aggressor. IC § 35–41–3–2(d)(3); *Southard v. State,* (1981) Ind.App., 422 N.E.2d 325.

▆▆▆ Whether the State has disproved appellant's claim of self-defense is a question of fact for the jury. *McCraney, supra; Dean v. State,* (1982) Ind., 432 N.E.2d 40. In determining the issue of self-defense, the jury must consider the evidence from appellant's perspective to ascertain whether he faced such apparent danger as caused him in good faith to fear death or great bodily harm. *McCraney, supra; Brooks v. State,* (1982) Ind., 434 N.E.2d 878; *Nuss v. State,* (1975) 164 Ind.App. 396, 328 N.E.2d 747; IC § 35–41–3–2(a) [Burns Supp.1983]. The jury is not required to believe appellant, but may reject his version entirely. *Menefee v. State,* (1981) Ind., 417 N.E.2d 302.

▆▆▆ Appellant claims the evidence was insufficient to sustain his conviction because the State did not disprove self-defense. In reviewing the sufficiency of the evidence, this Court does not reweigh the evidence or the credibility of the witnesses. *Lewis v. State,* (1982) Ind., 438 N.E.2d 289; *Borden v. State,* (1980) 272 Ind. 668, 400 N.E.2d 1368.

At the time of the crime, Murder in the Second Degree was defined by I.C. § 35–1–54–1 (1971), Ind.Stat.Ann. § 10–3404 [Burns Supp.1974]:

"Whoever purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree ...." (Repealed by Acts 1976, P.L. 148, § 24, effective October 1, 1977.)

▆▆▆ There was testimony that after the victim approached appellant, appellant quickly turned toward the victim and assailed him verbally. He then shoved him to the floor and shot him as he fell. The jury could reasonably infer appellant was the initial aggressor, that he did not believe himself to be in any danger, and that he killed the victim purposely and maliciously.

Thus, the evidence was sufficient for the jury to convict appellant of Murder in the Second Degree and to defeat his contention he acted in self-defense.

■ Appellant next claims the trial court improperly limited defense counsel's cross-examination and that he was prejudiced thereby. The scope of cross-examination is within the discretion of the trial court and any ruling will be reversed only for an abuse of discretion. *City of Indianapolis v. Swanson,* (1983) Ind., 448 N.E.2d 668; *Schalke v. State,* (1979) 272 Ind. 134, 396 N.E.2d 384.

■ In an effort to impeach Link's testimony, defense counsel attempted to show his attention was directed toward meeting girls, and not upon the victim during the shooting. He posed the question: "You wouldn't have turned them [girls] down if you had run across them?" The trial court sustained the prosecution's objection to the hypothetical question. Appellant cannot claim prejudice because defense counsel was not allowed to question Link about his activities that night, and about his conversations with girls in the club. Furthermore, another witness who was positioned closer to the victim gave substantially similar testimony concerning the incident.

The State called Dr. Levin, the surgeon who operated on the victim, to testify regarding the bullet's point of entry into the victim's body and the approximate course it took through the body. On cross-examination, defense counsel asked Dr. Levin several questions about the angles at which a bullet might enter a falling victim, and also if he had ever drawn a pistol from a holster. The deputy prosecutor objected to the line of questioning as improper cross-examination, and the court sustained his objection.

■ Appellant's attorney argues that he should have been allowed to examine Dr. Levin concerning his background and experience, including his personal experiences, in the area of bullet trajectories. The witness was an expert in medicine, not bullet trajectories. He testified about the injuries he discovered the bullet caused inside the body, and complained during questioning that he did not "really have a great knowledge of the problems that go along with gunshot wounds, other than the injuries they cause." The trial court thus properly sustained the objection because the questioning called for testimony outside the scope of direct examination and outside the scope of Dr. Levin's expertise. Although the objection was sustained during cross-examination, both prosecution and defense thoroughly explored this area of questioning on redirect and recross-examination. Appellant can claim no prejudice.

Appellant objected at trial to the admission of an autopsy report. He claims the trial court's reading of the report to the jury, and then allowing jurors to view the attached diagrams of the victim's body was error because it was merely cumulative of Dr. Levin's testimony.

■ Cumulative evidence is "[t]hat which goes to prove what has already been established by other evidence." BLACK'S LAW DICTIONARY 343 (5th ed. 1979). Such evidence is not inadmissible *per se. Hyde v. State,* (1983) Ind., 451 N.E.2d 648; *Chittenden v. State,* (1982) Ind., 436 N.E.2d 86. Evidence relevant to illustrate the testimony of witnesses is admissible although it is cumulative. *Feller v. State,* (1976) 264 Ind. 541, 348 N.E.2d 8. The admission of cumulative evidence is within the discretion of the trial court. *Hedges v. State,* (1982) Ind., 443 N.E.2d 62; *Webster v. State,* (1981) Ind., 426 N.E.2d 1295. Absent an abuse of that discretion, we will not disturb the ruling. *Hyde, supra; Paige v. State,* (1982) Ind., 441 N.E.2d 438.

■ In the case at bar, Dr. Levin related the path of the bullet after entry into the body, but was unable to specifically point out the precise location at which the bullet entered. He stated the best description he could give was that the bullet entered through the victim's "left flank" area. The autopsy report included the pathologist's explanation of the bullet's traverse, but also contained a statement that the entry point was "23 and ½ inches from the

top of the head and 6 inches to the left of the midline" of the victim's back. The diagrams illustrated the location and thus aided the jury's understanding of the evidence upon self-defense. The trial court did not abuse its discretion in admitting the report.

Appellant also contends the trial court committed reversible error by overruling his attorney's objection to the deputy prosecutor's comments in closing argument that the appellant had a reputation of being a hard loser while gambling.

The State theorized appellant did not shoot the victim in self-defense, but shot him for edging too close to appellant's position at the table, while he was in an agitated state over his gambling losses. J.C. Collins testified he had run the game at the club for the two years prior to the shooting, and that he had observed appellant gambling there on a regular basis. He told the jury, "I would say he's [appellant] a bad loser, a hard loser." No objection was made to this testimony.

During final argument, the prosecution commented that appellant's reputation with Mr. Collins was that of a hard loser. Appellant objected to the use of the word "reputation," and stated that Mr. Collins had only given his "characterization" of appellant. The trial court overruled the objection and admonished the jury to "recall the evidence," and reminded the jurors that "comments of counsel are not evidence." Prompt admonishment cured any potential error here. *Lambert v. State,* (1983) Ind., 448 N.E.2d 288; *Tinnin v. State,* (1981) Ind., 416 N.E.2d 116; *Smith v. State,* (1978) 270 Ind. 1, 382 N.E.2d 937.

Appellant finally contends the trial court erroneously refused to declare a mistrial based upon the prosecution's alleged intentional reference to the fact that a prior trial had been held.

During the State's cross-examination of appellant, the prosecution requested appellant to demonstrate the physical actions taken by the victim which had supposedly put him in fear. After the demonstration, the deputy prosecutor asked appellant if he remembered giving dissimilar demonstrations to the court on an earlier occasion.

Appellant argues the only possible inference the jury could have drawn from this reference to prior testimony was that appellant had been convicted of the offense at an earlier trial.

The State was entitled to show prior inconsistent statements or demonstrations by the appellant notwithstanding the fact they occurred at a prior trial. *Finney v. State,* (1979) 179 Ind.App. 316, 385 N.E.2d 477.

Appellant's allegation that the prosecution's statement in final argument that the State was not required to prove premeditation constituted prosecutorial misconduct is meritless. Appellant strains to say "the only reason the deputy mentioned it was to place in the minds of the jurors the earlier conviction for the offense for which the defendant was now on trial, and that the earlier conviction or earlier charge had some relationship to murder in the First Degree and the element of premeditation." We fail to see how such an inference could be drawn. This reference to premeditation was made during the prosecution's rebuttal argument in response to defense counsel's mentioning First Degree Murder and premeditation in appellant's closing argument.

The trial court is in all things affirmed.

All Justices concur.