Becky A. NEWELL, Appellant
(Defendant Below),

v.

James M. WALKER, Appellee
(Plaintiff Below).

No. 2–1083A373.

Court of Appeals of Indiana,
Second District.

June 12, 1985.

Michael J. Stapleton, Patricia P. Truitt, Ball, Eggleston, Bumbleburg & McBride, Lafayette, for appellant.

Phillip R. Smith, Smith, Helmerick & Smith, Lafayette, for appellee.

SULLIVAN, Judge.

James Walker (Walker) suffered an adverse jury verdict in his claim against Becky Newell (Newell) for personal injuries incurred after his motorcycle and her car collided. Subsequently he filed, and the trial court granted, a motion to correct errors based on newly discovered evidence. Newell now appeals the grant of a new trial.

We affirm.

Newell presents four issues which may be stated as follows:

(1) Whether the submission of an affidavit of an ex-juror stating that her vote would have been different had the newly discovered evidence been before her at trial was an improper attempt to impeach the jury's verdict which precluded the trial judge from granting Walker a new trial.

(2) Whether the newly discovered evidence was in fact cumulative, and, therefore, could not justify a new trial.

(3) Whether the trial court committed reversible error by failing to specifically state on the record that the evidence was not cumulative.

(4) Whether the use of affidavits is insufficient to support a motion to correct errors because it makes careful judicial scrutiny of the new evidence impossible.

The accident occurred on May 16, 1981. Both Newell and Walker were proceeding northbound on State Road 43 approaching the automobile traffic signal where Elston Road and State Road 43 intersect near Lafayette. It was shortly after 7:00 P.M., the roads were paved and dry, and the day was clear. Newell was driving her dark-colored Buick and Walker was driving his Harley Davidson motorcycle. Beyond these facts the parties' versions of the accident differ significantly.

Walker was on his way home to take his wife out to dinner after showing some friends some recent changes he had made on his motorcycle. Walker contends that he was driving north on State Road 43 when a friend, Larry Potts (Potts), also riding a motorcycle, pulled onto the road and drove beside him. Walker was driving on the left side and Potts on the right with about a car width between them. At this time a dark-colored car passed them, crossed the double yellow lines, pulled back in front of them, and stopped, suddenly, for the red light. Potts dropped back to give Walker room to maneuver. Walker braked while he veered to the right in order to avoid any oncoming traffic, hit his left shin

against Newell's car and went out of control. Walker landed near the front door of Newell's car and his motorcycle landed in the middle of the intersection.

Newell was on her way to a baseball game with her son and daughter. She contends that Walker pulled onto State Road 43 behind her some distance before the Elston Road intersection. She noticed Walker because he repeatedly drove up close to her car and then dropped back again. She slowed for the light and heard a thump against the back of her car which turned out to be Walker. She contends that Walker was either distracted by something or was trying to beat the red light, when he hit the back of her car and went out of control.

Walker suffered a broken leg as a result of the accident which has since caused him to lose his job. The leg failed to heal properly, resulting in considerable pain and numerous medical procedures, surgeries and hospital stays.

At trial Walker testified in support of his own version of the facts and Newell and her children testified in support of hers. Potts, Walker's friend, also testified that a dark-colored car squeezed Walker and himself off the road. However, Potts admitted that he was looking straight ahead at the time and that his primary concern was for his own safety. Potts could not remember seeing any cars behind Walker prior to pulling out onto State Road 43. Potts' recollection, however, was not entirely consistent. Potts' wife was on Potts' motorcycle sitting behind him. She testified that the accident happened so quickly she really did not see anything but that she seemed to remember a car zooming past them. The other witnesses testified as to what they saw at the intersection, but did not see what happened before. Their testimony, therefore, neither supported nor refuted either Walker or Newell's version.

After the conclusion of the trial, one of the jurors, Alice Everhart (Everhart), served on a different jury. She discussed Walker's case with Elliott, a juror on the second case. Elliott stated that she had

viewed the entire accident from the first car stopped at the traffic light on State Road 43, headed south. Furthermore, she corroborated Walker's story that Newell had passed Walker and then stopped suddenly, causing Walker to go out of control. Everhart called Walker's attorney to tell him of this newly found witness.

Walker's attorney thereafter filed a motion to correct errors and attached three affidavits. The first was from the attorney and explained his due diligence in preparing Walker's case. The second was from the newly found witness, Elliott, stating what she saw of the accident and explaining that she had not informed the police that she was a witness because someone at the scene told her they had enough witnesses. The third was from Everhart, the juror from Walker's case, stating that her decision would have been different had the newly discovered witness testified.

Walker submitted Everhart's affidavit to support his claim that the newly discovered witness's testimony would probably have produced a different result at the trial. Newell contends that the affidavit served to impeach the jury's verdict and, therefore, was improperly submitted to the judge requiring a reversal of the judge's decision.

The prohibition against impeaching a jury verdict is both time honored and well reasoned. As was stated in *Stinson ·v. State* (1974) 262 Ind. 189, 313 N.E.2d 699, 704:

"If this Court were to permit individual jurors to make affidavits or give testimony disclosing the manner of deliberation in the jury room and their version of the reasons for rendering a particular verdict there would be no reasonable end to litigation. Jurors would be harassed by both sides of litigation and find themselves in a contest of affidavits and counter-affidavits and arguments and re-arguments as to why and how a certain verdict was reached. Such an unsettled state of affairs would be a disservice to the parties litigant and an unconsciona-

ble burden upon citizens who serve on juries."

This rule applies with equal weight when the affidavits are introduced in an attempt to show that newly found evidence might well produce a different result upon retrial. *Shaffer v. State* (1983) 1st Dist., Ind.App., 453 N.E.2d 1182, *trans. denied.*

■ Had Walker presented only Everhart's affidavit to the trial judge we would be required to reverse the trial judge's decision. For example, in *Stauffer v. Lothamer* (1981) 4th Dist., Ind.App., 419 N.E.2d 203, the defendant challenged a jury verdict alleging juror misconduct. The only evidence presented in support of the defendant's motion was the deposition of a prior juror taken in open court before the trial judge. The court held that this constituted an impermissible impeachment of the jury verdict and denied the defendant a new trial. In *Shaffer v. State, supra,* our First District held that the trial judge had not committed error by refusing to consider the affidavit of a prior juror which had been submitted by the defendant to show the probable effect the newly discovered evidence would have had on a reasonable juror. The court did not, however, hold that the mere inclusion of the prior juror's affidavit precluded the grant of a new trial. Instead, the court examined the other affidavits the defendant had submitted and determined that the trial judge had not committed error by denying the defendant a new trial. Similarly, here Walker also presented Elliott's affidavit to the judge.

Elliott's affidavit, alone, sufficiently showed the need for a new trial. Therefore, the inclusion of Everhart's affidavit does not render the trial court's ruling erroneous. For example, in *Laine v. State* (1972) 3d Dist., 154 Ind.App. 81, 289 N.E.2d 141, the court overturned a jury verdict in spite of the defendant's inclusion of a prior juror's affidavit because the prosecutor's response to the defendant's motion to correct errors independently showed juror misconduct. Therefore, the trial judge here could ascertain the effect of Elliott's testi-

mony without Everhart's affidavit and his ruling need not be disturbed.

Newell, however, argues that the grant of a new trial was reversible error because Elliott's testimony is cumulative and, in the alternative, because the judge failed to state on the record that the evidence was not cumulative. Newell contends that Elliott's testimony merely repeats the testimony of Walker, Potts and Potts' wife.

■ We note, initially, that neither Trial Rule 59 [1] nor the cases interpreting it require the trial judge to specifically state which justifications do or do not exist for granting a re-trial on the basis of newly discovered evidence. In the absence of evidence to the contrary, this court will not presume that the trial court improperly carried out its duties in ruling on the motion. *Salrin v. State* (1981) 3d Dist., Ind.App., 419 N.E.2d 1351, 1354.

■ The trial court exercises wide discretion in deciding whether to grant a new trial on the basis of newly found evidence and will be reversed only for an abuse of that discretion. *Moredock v. State* (1982) Ind., 441 N.E.2d 1372. Newell only questions whether the court abused its discretion in determining that Elliott's evidence was not cumulative.[2] An abuse of discretion is an erroneous conclusion and judgment, clearly against the logic and effect of the facts and circumstances before the court or the reasonable deductions to be drawn therefrom. *Cross v. City of Gary* (1984) 3d Dist., Ind.App., 456 N.E.2d 728. Therefore, we must affirm the trial court's decision to grant a new trial if it conformed to the logical effects of the facts and circumstances before him.

■ Cumulative evidence is evidence which tends to prove that which has already been established. *Davis v. State* (1983) Ind., 456 N.E.2d 405. Elliott's affi-

davit explains that she would testify that she saw a dark car cross the double yellow lines, pass Walker and Potts, cut back into the northbound lane and stop suddenly for the light, causing Walker to go out of control and hit the car. Furthermore, Elliott was a passenger in the first southbound vehicle at the light with no apparent distractions. Potts' wife was not confident she had seen a car pass them; her view was obstructed by her husband and the incident happened too quickly. Although Potts corroborated Walker's story, he was distracted by the need to keep control of his own motorcycle and by having to give Walker room to maneuver. Walker, Newell and Newell's children were all partial witnesses. Only one of Newell's other witnesses saw anything before the actual collision, but his view was obstructed by two or three automobiles and he could not see why or how Walker went out of control. Only Elliott saw all the events, from start to finish, without any known distractions. Consequently, we cannot rule as a matter of law that the trial judge's inferential determination that Elliott's testimony was not cumulative was an erroneous conclusion, clearly against the logic and effect of the facts and circumstances before him, or the reasonable deductions to be drawn therefrom. *Cross, supra.*

Newell cites two cases to support her claim that Elliott's testimony is cumulative and cannot support the grant of a new trial. In the first, *Williams v. State* (1979) 4th Dist., 181 Ind.App. 526, 392 N.E.2d 817, the trial court denied a new trial when defendant's twin brother later confessed to having actually committed the crime. The brother's testimony, however, was cumulative to the defendant's, his mother's and his sister's testimony. Therefore, the court stated that the denial of a new trial in that case was not an abuse of discretion. In the second case, *Cua v. Ramos* (1982) Ind., 433

---

1. Ind. Rules of Procedure.

2. We note that the trial judge actually must examine whether the newly found evidence (1) has actually been discovered since trial; (2) is material and relevant; (3) is cumulative; (4) is merely impeaching; (5) is privileged or incom-

petent; (6) was not found in spite of the attorney's due diligence; (7) is credible; (8) can be produced upon re-trial; and (9) would probably produce a different result. *Bryant v. State* (1979) 270 Ind. 268, 385 N.E.2d 415, 421.

N.E.2d 745, the plaintiff was denied a new trial based on newly discovered evidence consisting of additional employees' testimony bolstering the character and reputation and impugning that of the defendant and her witness. The *Cua* court noted that this testimony would be cumulative, could have been discovered prior to trial, and probably would have had very little effect on the trial's outcome. Neither case dealt with the situation presented here because neither dealt with the discovery of the only disinterested person to witness events crucial to the case of the party seeking the new trial. Furthermore, both *Cua* and *Williams* dealt with appeals from the *denial* of the motion for a new trial. Just as those courts could not find an abuse of discretion mandating a reversal of trial judge's decision, neither can we conclude that the trial court abused its discretion.

■ Finally, Newell argues that because Walker presented this newly found evidence in the form of an affidavit the trial court could not have carefully scrutinized it nor received it with great caution. Newell contends that careful scrutiny requires in-court, in-person, testimony from a newly discovered witness. Again, we note the wide latitude given a trial court in this area. We also note that the affidavits used here were sworn to and if the proper conditions were met, might have been admissible at trial. *See State v. Cleland,* (1985) Ind., 477 N.E.2d 537; *Azimov v. Azimov* (1970) 146 Ind.App. 341, 255 N.E.2d 667. Trial Rule 59 provides that Newell may have submitted counter-affidavits to refute or show the untrustworthiness of the newly found evidence. While Newell's argument is not without some merit, the objection regarding her inability to cross-examine Elliott without a demonstration of what that cross-examination might divulge does not compel us to reverse the trial judge's decision.

Accordingly, we affirm the order granting a new trial.

BUCHANAN, C.J., and SHIELDS, J., concur.