**FREEDOM EXPRESS, INC.,**
Appellant–Defendant,

v.

**MERCHANDISE WAREHOUSE
COMPANY, INC., Appellee.**

No. 49A02–9309–CV–490.

Court of Appeals of Indiana,
Second District.

March 10, 1995.

Patrick C. Badell, Robert G. Gulde, Badell & Wilson, P.C., Rushville, for appellant.

Mary F. McFearin, Foley & Pool, Indianapolis, for appellee.

## OPINION

SULLIVAN, Judge.

Freedom Express, Inc. (Freedom) appeals the summary judgment granted to Merchandise Warehouse Co., Inc. (Merchandise) in a landlord/tenant action arising from alleged rent arrearage and property damage.

We affirm in part, reverse in part, and remand for further proceedings.

Freedom presents two issues for our review, which we restate as: (1) whether the trial court erred in granting Merchandise's motion for summary judgment; and (2) whether the trial judge abused his discretion in denying Freedom's first and amended motions for leave to file a counterclaim.[1]

On July 19, 1990, Merchandise, as lessor, and Freedom, as lessee, entered into a written lease agreement. Pursuant to the lease, Freedom agreed to pay $500.00 per month to Merchandise for the use of approximately 2,000 square feet of warehouse space over a term of twenty-four months, commencing July 23, 1990, and ending July 22, 1992.

Merchandise and Freedom each agreed to pay one-half of the cost for Merchandise to erect a fence separating Freedom's leased space from the rest of the space within the building. Freedom occupied the warehouse space from July 23, 1990 to March 23, 1992, when it left without making any further payments to Merchandise under the lease.

On May 4, 1992, Merchandise filed suit for breach of the lease agreement and sought recovery for the unpaid rent. Merchandise also sought recovery of its cost to repair damage Freedom allegedly caused to the fence separating Freedom's property from the rest of the building, its cost to repair damage Freedom allegedly caused to two dock doors when it vacated the premises, its cost to clean the premises, and its attorneys fees pursuant to the lease agreement. On March 2, 1993, Merchandise filed a motion for summary judgment, in support of which it filed a memorandum, and an affidavit of its general manager, Donald Foley. Later, Freedom filed a counter-affidavit signed by its president, Ronald Jarboe (Jarboe). Freedom also filed a Motion for Leave to File Counter Claim, which the trial court denied.

On May 21, 1993, the day of the hearing on Merchandise's summary judgment motion, Freedom filed an Amended Motion for Leave to File Counter Claim. Four days later, the trial court denied that motion, and granted Merchandise's Motion for Summary Judgment, awarding it a total of $7,620.00 for rent arrearage, costs to repair property damage, cleaning costs, prejudgment interest, and attorney's fees.

All of the above facts are undisputed. Other facts will be set forth where appropriate or necessary.

## I. Summary Judgment

### A. Rent Arrearage

By its own admission, Freedom refused to pay rent due under the lease agreement after vacating the warehouse, and the trial court

1. Merchandise points out that the trial court awarded Merchandise its attorney fees pursuant to paragraphs 9 and 12 of the lease agreement. Should we affirm the trial court's entry of summary judgment, Merchandise asks us to remand to the trial court for the sole purpose of determining the amount of attorney fees to which they

are entitled for defending the trial court's grant of summary judgment on appeal. However, because we find that the trial court improperly granted summary judgment with respect to certain issues, we will not address the issue of attorney's fees upon appeal and we decline Merchandise's invitation to remand on this point.

awarded Merchandise $2,500.00 in back rent as part of its summary judgment. Merchandise argues that the facts dispositive of the rent issue are not disputed because the terms of the lease agreement, which required Freedom to continue to pay rent until the end of the term, governed the rights and obligations of the parties.[2]

Freedom does not now, nor did it at the trial court level, point to any provision in the lease agreement which would excuse its obligation to pay rent before the lease term expired. Instead, Freedom argues that a strong odor caused by stored chemicals irritated its workers and created a condition in the warehouse which both necessitated and justified its departure, and that this condition excused Freedom's obligation to pay the rent for the remaining lease period. Although Freedom did not label the principle as such in its Answer or in any other pleading,[3] the practical import of its argument asserts grounds for constructive eviction.[4] The critical question then becomes whether Freedom may properly present a constructive eviction argument when it has not specifically plead it as an affirmative defense nor asserted it in a counterclaim. We hold that it cannot.

In general, lessees may assert constructive eviction as the basis for a claim or a counterclaim against a lessor whose act or omission has materially deprived the lessee of the beneficial use or enjoyment of the leased property to such a degree that the lessee must leave.[5] See Williams v. Hittle (1994) 2d Dist.Ind.App., 629 N.E.2d 944, 950–51, trans. denied; T & W Bldg. Co. v. Merrillville Sport & Fitness, Inc. (1988) 3d Dist. Ind.App., 529 N.E.2d 865, trans. denied; Sigsbee v. Swathwood (1981) 3d Dist.Ind. App., 419 N.E.2d 789. Lessees also may assert constructive eviction as an affirmative defense to a suit initiated by the lessor following the lessee's departure and refusal to pay rent. See Lafayette Realty Corp. v. Vonnegut's, Inc. (1984) 1st Dist.Ind.App., 458 N.E.2d 689; State v. Boyle (1976) 1st Dist., 168 Ind.App. 643, 344 N.E.2d 302, 304.

Because Freedom has claimed the chemical odor to justify its leaving the warehouse and its refusal to pay the remaining rent due under the lease agreement, it constitutes a defense. It should have asserted such an argument as an affirmative defense. The determination of whether a defense is

2. Paragraph 10 of the lease agreement between Freedom and Merchandise reads as follows:

"ABANDONMENT OF PREMISES. If Lessee shall abandon or vacate said premises before the end of the term, or any other event shall happen entitling Lessor to take possession thereof, Lessor may take possession of said premises and relet the same without such action being an acceptance of a surrender of this lease, or in any way terminating Lessee's liability hereunder, and Lessee shall remain liable for the payment of the rent herein reserved, less the net amount realized by Lessor from such reletting after deduction of any expenses incidental to such possession and reletting." Record at 10, 81.

3. Freedom raised this issue in its discovery responses and in Jarboe's counter-affidavit, which indicated that it left the warehouse because "[Merchandise] was storing chemicals and said chemicals were an irritant to the employees of [Freedom] and after numerous complaints, [Merchandise] failed and/or refused to do anything to alleviate the problem[.]" Record at 66. In responding to Merchandise's first set of interrogatories, Freedom, again through Jarboe, asserted that it vacated the warehouse prior to the expiration of the lease because, inter alia, (1) "strong chemical odors gave employees headaches [and]

nausa [sic]"; (2) "[Merchandise] wanted [Freedom] to train [its] employees in the handling of chemicals"; and (3) "chemicals were stored in isle [sic] ways...." Record at 87. At the summary judgment hearing, Freedom's counsel again maintained that Freedom believed there was a factual basis for its leaving the warehouse; namely the problems allegedly caused by the stored chemicals. Clearly, all of these matters were before the trial court upon motion for summary judgment.

4. In Indiana, if a lessor's act or omission materially deprives the lessee of the beneficial use or enjoyment of the leased property, the lessee may elect to abandon the property and avoid further obligations under the lease. Sigsbee v. Swathwood (1981) 3d Dist. Ind.App., 419 N.E.2d 789, 794; Zalud v. Ethan Assocs. (1981) 3d Dist. Ind. App., 418 N.E.2d 309, 312. See also Talbott v. English (1901) 156 Ind. 299, 59 N.E. 857.

5. Generally, damages available for constructive eviction include the actual or rental value of the unexpired lease term less the rent reserved. In addition, compensation may be recovered for whatever other loss results, including lost profits that are the natural or usual result of the breach. 49 AM.JUR.2d, Landlord and Tenant §§ 323–26 (1970).

affirmative depends upon whether it merely controverts an element of the plaintiff's prima facie case or whether it presents matter outside the scope of the prima facie case. *Rice v. Grant County Bd. of Comm'rs* (1984) 2d Dist.Ind.App., 472 N.E.2d 213, *trans. denied.* As stated in *Rice,* "[A]n affirmative defense is one upon which the proponent bears the burden of proof and which, in effect, *admits* the essential allegations of the complaint, but asserts additional matter barring relief. Ind.Rules of Procedure, Trial Rule 8(C)." 472 N.E.2d at 214. Constructive eviction requires the proponent to bear the burden of proof. Moreover, Freedom raises the chemical odor as a way to justify its departure and to bar Merchandise from collecting back rent. Accordingly, Freedom's constructive eviction argument meets the criteria that Indiana courts have required for an affirmative defense.

■ Pursuant to Rule 8(C) of the Indiana Rules of Trial Procedure, a party seeking the benefit of an affirmative defense must raise and specifically plead that defense or it is waived. 1 Harvey, Indiana Practice: Rules of Procedure Annotated § 8.7, at 380 (2d ed. 1987); *Piskorowski v. Shell Oil Co.* (1980) 3d Dist.Ind.App., 403 N.E.2d 838, 847. This is true even if the affirmative defense is not specifically enumerated among those defenses set forth in Trial Rule 8(C). 1 Harvey, *supra* § 8.7 at 382. Because Freedom did not specifically plead constructive eviction as an affirmative defense to its requirement to pay back rent in its Answer or otherwise, it has waived its right to do so now.

Alternatively, Freedom could have chosen to claim constructive eviction in a counter-

claim pursuant to Rule 13(A) of the Indiana Rules of Trial Procedure, but it did not do so initially and it did not receive leave of court to file one thereafter.[6] Freedom cannot, via discovery responses and an affidavit designated to the trial court, create a factual issue based upon an argument which the Indiana Rules of Trial Procedure require to have been raised in another manner. Accordingly, because no factual issues remain concerning whether Freedom must pay the back rent, we determine that the trial court did not err in awarding Merchandise $2,500 in rent arrearage.

### B. *Costs to Repair Property Damage and Clean-up Costs*

■ The affidavits and memoranda supporting each party's position upon the summary judgment motion reveal several disputed facts concerning the condition of the warehouse after Freedom vacated. Freedom insists that "it is quite apparent that the trial court had to weigh conflicting evidence in the parties' affidavits in order to reach its decision on summary judgment and the trial court found that the affidavit submitted by [Merchandise] to be [sic] more credible than the affidavit submitted by Freedom." Brief of Appellant at 12. It is this alleged finding which Freedom claims as reversible error in the context of a summary judgment ruling.[7]

Despite the apparent conflicting facts, Merchandise maintains that a *good faith* dispute does not exist, arguing that the only issue of material fact raised by Jarboe's counter-affidavit is Jarboe's credibility because it contradicts answers he earlier submitted under oath.[8] Accordingly, Merchan-

---

6. We can only speculate that Freedom intended to assert constructive eviction via a counterclaim pursuant to Rule 13(F), which allows a party to amend pleadings to add an omitted counterclaim after first obtaining leave of court. The trial court in this case denied two motions in which Freedom requested leave to file an omitted counterclaim. We review those decisions *infra* in Part II.

7. The court's summary judgment ruling does not contain any statement from which it could be inferred that the court did note conflicting evidence and gave weight to Merchandise's version of the facts as opposed to Freedom's. Neverthe-

less, the record reflects very real conflicts as to the material facts.

8. In support of its argument, Merchandise relies upon *Gaboury v. Ireland Road Grace Brethren, Inc.* (1983) Ind., 446 N.E.2d 1310, 1314, a case in which our Supreme Court held that " 'contradictory testimony contained in an affidavit of the nonmovant may not be used by him to defeat a summary judgment motion where the only issue of fact raised by the affidavit is the credibility of the affiant.' " In so holding, the *Gaboury* court's fundamental concern was that a party's ability to raise an issue of fact simply by submitting an affidavit contradicting his own prior deposition testimony " 'would greatly diminish the utility of

dise concludes that the trial court properly found that Freedom could not use such contradictory statements to defeat Merchandise's summary judgment motion. We disagree because we do not find contradictions in Freedom's positions.

Merchandise first finds an inconsistency between Freedom's discovery responses and Jarboe's counter-affidavit regarding damage and subsequent repair to the warehouse's front dock doors. In response to Merchandise's Request for Admissions, Jarboe admitted that the only damage to the warehouse was to the "docks" and the brick around the front dock doors. Record at 76. Those responses also asserted that Merchandise refused to allow Freedom to repair either the dock or the bricks.[9] Later, in his counter-affidavit, Jarboe testified that Freedom "did cause some damage to the doors, however, the damage was repaired prior to [Freedom] leaving[.]" Record at 66.

Merchandise's next alleged inconsistency involves the allegedly cluttered condition of the warehouse after Freedom moved out. In answering one of Merchandise's interrogatories, Freedom indicated that it tried to leave the premises in the same condition as they were found, but that Merchandise would not let it. Record at 88. Jarboe then stated in his counter-affidavit that Freedom "left the premises in an uncluttered, broom-clean condition at the time of its leaving[.]" Record at 67.

Upon the surface, it seems as though Jarboe's counter-affidavit testimony that Freedom damaged the dock doors, but that it repaired all such damage, contradicts his earlier statement that the doors were not damaged. A closer examination reveals that the two statements are not contradictory. Jarboe maintained that the dock doors were not damaged in response to Merchandise's request that Freedom admit the following fact: "Two (2) dock doors located in the premises leased to Freedom Express were damaged when Freedom vacated the premises." Record at 76. Indeed, if Freedom's position is that it repaired any damage done to the doors before it left, then it is perfectly consistent that it would respond that the doors were not damaged at the time it left the warehouse.

Next, Freedom's position that the damage to the doors "was repaired" is not inconsistent with its earlier position that Merchandise would not let it make certain repairs. Jarboe never indicated that Merchandise refused to let it repair the doors themselves. The responses consistently allege that Merchandise refused to let Freedom repair the "brick surrounding the doors" and the minor damage to the "dock." Finally, one may logically infer that the "conditions" to which Jarboe referred in his interrogatory answer involved the alleged damage to the front door and dock area, and not to the general condition of the warehouse surface. Thus, we determine that Jarboe's counter-affidavit was properly before the trial court as part of the designated materials, and that Freedom could rely upon it to demonstrate genuine issues of material fact.

Having so determined, we now review the materials designated to the trial court to determine whether the parties dispute any genuine issues of material fact concerning the remaining claimed property and clean-up damages. In doing so, we conclude that material issues of fact remain regarding Freedom's responsibility for causing the damage which required Merchandise to repair the warehouse dock doors and the warehouse fence, and for allegedly leaving the warehouse surface cluttered with debris. With regard to the damage Freedom allegedly caused to the dock doors, Freedom contends that it repaired all such damage before it left. Merchandise maintains that it did

---

summary judgment as a procedure for screening out sham issues of fact.'" *Id.* at 1314 (citing, *inter alia, Perma Research & Dev. Co. v. Singer Co.* (1969) 2d Cir., 410 F.2d 572, 578).

9. In responding to Merchandise's Request for Admissions, Freedom indicated that it "tried to repair the minor damage done to docks and Merchandise Warehouse would not let [it]."

Record at 76. Further, Freedom submitted that "[Merchandise] refused to let [it] repair the damages to bricks." Record at 77. Freedom's answers to Merchandise's interrogatories also indicate that Freedom tried to make repairs to the brick, but were not allowed to do so. Record at 87.

not. This is a question of material fact. The same is true with regard to the fence and the debris Freedom allegedly left behind when it left the premises.

The cause of the dock door damage, the fence damage, and the surface debris clearly remains disputed. Accordingly, summary judgment was improper to the extent that it foreclosed the litigation of material issues of fact remaining in those areas. We reverse and remand for the trial court to ascertain the cause of the dock door damage and fence damage, if any, and the surface debris, if such existed. Should Freedom be found responsible in any or all of those areas, the factual issue as to the amount of damages to compensate Merchandise must also be resolved.

■■■ The above discussion and decision does not, however, alter the trial court's decision regarding the damage to the brick and walls around the dock doors. Freedom admitted damaging bricks there. Paragraph 4 of the lease agreement provides that Freedom, as Lessee, is responsible for the costs Merchandise, as Lessor, incurred in making repairs occasioned by Freedom's failure to return the premises, equipment, and fixtures in as good a condition as it was when the term began, excepting only ordinary wear and tear. The brick damage was not ordinary wear and tear. Because there is no issue regarding Freedom's liability for the brick damage, Freedom is responsible for the cost Merchandise incurred in making the repairs to the brick around the doors according to the terms of the lease agreement. Freedom's allegation that Merchandise would not allow it to repair the damaged bricks is of no moment. The lease does not require Merchandise to allow Freedom to make such repairs before making the repairs itself, and Freedom has cited no authority either to us or to the trial court indicating otherwise.

As Merchandise argues, a trial court may properly arrive at a damage award so long as the amount awarded is supported by the evidence and not based upon speculation or

conjecture. *National Advertising Co. v. Wilson Auto Parts, Inc.* (1991) 5th Dist. Ind. App., 569 N.E.2d 997; *Cato v. David Excavating Co., Inc.* (1982) 1st Dist. Ind.App. 435 N.E.2d 597. Any uncertainty regarding the amount of damages must be resolved against the wrongdoer. *Babson Bros. Co. v. Tipstar Corp.* (1983) 1st Dist. Ind.App., 446 N.E.2d 11. Therefore, we affirm the summary judgment to the extent that the trial court, upon remand, can determine what portion of the repair costs were attributable only to the walls and bricks surrounding the dock doors, and not attributable to the doors themselves.

## II. Denial of Amended Motion to File Counterclaim

■■■ Freedom argues that the trial court erred in denying its motions for leave to file a counterclaim. Trial Rule 13(F) of the Indiana Rules of Trial Procedure provides:

**"Omitted Counterclaim.** When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment."

A decision to grant or deny leave to file an omitted counterclaim is committed to the sound discretion of the trial court. *Peffley & Henshaw Wrecker Serv. v. Swalls* (1990) 1st Dist. Ind.App., 554 N.E.2d 1169, 1172; *Metropolitan Real Estate Corp. v. Frey* (1985) 2d Dist. Ind.App., 480 N.E.2d 267, 271, *trans. denied.* An abuse of discretion is an erroneous conclusion and judgment, clearly against the logic and effect of the facts and circumstances before the court or the reasonable deductions to be drawn therefrom. *Newell v. Walker* (1985) 2d Dist. Ind.App., 478 N.E.2d 1246.

■■■ Freedom first filed a Motion for Leave to File Counter Claim on March 19, 1993, which the trial court denied without a hearing. Freedom's first motion for leave to file a counterclaim failed to state any of the grounds that T.R. 13(F) provides concerning why the counterclaim previously was omitted.[10] On May 21, 1993, the day of the

---

10. Freedom's first motion did not include a contention that the delay was due to oversight, inadvertence, or excusable neglect. It read, in its

entirety, as follows: "Comes now the Defendant, by counsel, and would request the Court for an Order allowing the Defendant herein to file its

summary judgment hearing, Freedom filed an Amended Motion for Leave to File Counter Claim, which the trial court again denied. The amended motion was more specific, citing the following reasons for previously omitting the counterclaim: (1) Freedom was located in Louisville, Kentucky, which made communication with counsel difficult; (2) Freedom did not go to the expense of preparing a counterclaim because the parties were trying to reach a negotiated settlement; (3) justice requires a grant of the motion because the counterclaim "goes to the heart of a factual dispute in this instance", Record at 99; (4) Freedom previously filed a motion for leave to file its counterclaim; and (5) Merchandise did not file any responsive pleading or otherwise object to either motion.

Freedom contends that these grounds are sufficient to require that it be permitted to file a counterclaim against Merchandise. Freedom cites *Frey, supra,* 480 N.E.2d 267, in support of its argument. In *Frey,* we held that a trial court could properly allow a defendant leave of court to file a compulsory counterclaim after filing the first responsive pleading, even up to the time of trial if the plaintiff is not prejudiced in preparing a defense against it. Our holding that a trial court may allow the filing of a compulsory counterclaim *with leave of court* after filing defendant's first responsive pleading if the plaintiff is not prejudiced does nothing more than recognize the trial court's discretion in granting or denying such requests. To do so requires the trial court's approval. In this case, the trial court did not grant leave, and we will reverse only for an abuse of discretion.[11]

The only other case discussed by the briefs upon this issue is *Swalls, supra,* 554 N.E.2d 1169. In *Swalls,* the trial court denied the defendant's request, on the day the trial commenced, for leave to file a counterclaim for abuse of process. The trial court's denial was affirmed upon a determination that the defendant was not prejudiced by the trial

court's denial because he would have been able to pursue a separate suit for abuse of process pursuant to statute. In attempting to distinguish *Swalls* from this case and from *Frey,* Freedom argues that it would be prejudiced should we affirm because any claims it might have against Merchandise are compulsory in that such claims would arise out of the same transaction or occurrence as the subject of this suit. Further, Freedom argues that nothing in the Record indicates that Merchandise would have been prejudiced if the trial court had granted either of Freedom's motions, pointing out that Merchandise did not object or otherwise respond to either of its motions.

We first recognize that the defendant in *Swalls* failed to argue that the information it had regarding its counterclaim was unavailable prior to trial or to explain how that information affected the case. 554 N.E.2d at 1172. The same is true in this case. No new evidence was discovered, nor did any new facts arise between the time of Freedom's Answer and the time of Freedom's first and amended motions for leave to file counterclaims. In the context of a counterclaim, at no time did Freedom state the basis for its claim against Merchandise. Accordingly, as Merchandise recognizes, the trial court could not properly anticipate what Merchandise's defenses would be and whether, in fact, Merchandise would be prejudiced. Moreover, the fact that Merchandise did not object or otherwise respond to Freedom's motions is of no moment. We agree with Merchandise that Trial Rule 13(F) does not require the opposing party to make an objection or otherwise respond to the motion to file a counterclaim. The opposing party may choose to do so, but his or her failure will not preclude the trial court from exercising its discretion and denying the request to file the counterclaim.

Although Freedom points to one commentator's observation that Trial Rule 13(F) "is a

---

Counter Claim in this cause of action." Record at 70.

**11.** In the *Frey* opinion, we recognized that " 'since the decision whether to allow the counterclaim to be pleaded is a matter of judicial discretion, it can be reversed on appeal only if

the party can demonstrate that the court abused its discretion.' " 480 N.E.2d at 272 (citing 6 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1430 at 155 (1971)).

very liberal provision", 1 Harvey, Indiana Practice: Rules of Procedure Annotated § 13.12, at 726 (2d ed. 1987), the remaining reasons it proffers as "excusable neglect" simply do not persuade us that the trial judge abused his discretion in denying its motions for leave to file a counterclaim. Freedom waited nine months after serving its Answer before filing its first motion for leave to file a counterclaim, and then waited until the date set for the summary judgment hearing to file its amended motion. Here, we note the following, also from Professor Harvey: "If there is no effort to amend, it is unlikely that an appellate court will upset the trial court's discretion to refuse evidence, or, *if coming much too late, to refuse an attempted amendment and new counterclaim.*" 1 Harvey, *supra* § 13.12, at 727 (emphasis added). Even if communication between Freedom and its counsel was difficult, the time lapses are extraordinarily long. Finally, the existence of ongoing settlement negotiations is not a justifiable reason to delay an otherwise valid counterclaim. In fact, in many instances, the filing of a counterclaim serves to enhance a party's chances of settlement.

We conclude that the trial judge's decision is not clearly against the logic and effect of the facts and circumstances before him or the reasonable deductions he could draw from them. *Newell, supra,* 478 N.E.2d at 1250.

## CONCLUSION

We affirm the trial court's summary judgment with regard to rent arrearage, and the trial court's denial of Freedom's motions for leave to file a counterclaim. We reverse and remand for trial court findings consistent with this opinion concerning whether Freedom damaged the fence and the dock doors, the compensation to be awarded for such damage, if any, along with such compensation as may be attributable to the damaged walls and bricks. The court is further directed to determine whether Freedom failed to properly clean and remove surface debris from the area it occupied before leaving the warehouse and, if so, to award damages therefor.

The judgment is affirmed in part, reversed in part, and the cause is remanded for further proceedings.

KIRSCH and RILEY, JJ., concur.