## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 22 2017, 9:22 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Adam C. James
Shelbyville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

John F.M. Shaw,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

March 22, 2017

Court of Appeals Case No.
73A01-1609-CR-2204

Appeal from the Shelby Circuit Court.
The Honorable Charles D. O'Connor, Judge.
Cause No. 73C01-1408-FA-17

**Friedlander, Senior Judge**

[1] John Shaw appeals his jury convictions of child molesting as a Class A felony,[1] and child solicitation as a Class D felony.[2] The sole issue he raises is whether the State presented sufficient evidence to support his convictions. We affirm.

[2] Shaw and Christine Sargent met, dated, and eventually began living together. Their residence was in Shelby County, Indiana. They lived together for approximately four years before marrying in 2014.

[3] Christine has two children, a son, W.D., and a daughter, E.S., who lived with her and Shaw. E.S. was born with physical disabilities. She has no tear ducts in her right eye, a bilateral cleft lip and cleft palate, and issues due to amniotic band constriction.

[4] Shaw suffered from health problems that made it difficult for him to walk, and he was unable to work on a consistent basis. He spent large parts of the day in his recliner located on the first floor of the house. Christine worked two jobs that kept her away from the house most of the day and night.

[5] One day, when E.S. was in the sixth grade and eleven years old, she returned home from school and asked Shaw what a "blowjob" was. Tr. p. 30. E.S. had not heard the term before, but had heard older girls discussing the term at school. Shaw explained the term such that E.S. understood it to mean

---

[1] Ind. Code § 35-42-4-3(a)(1) (West, Westlaw 2007).

[2] Ind. Code § 35-42-4-6 (West, Westlaw 2007).

performing oral sex. Later that day, Shaw asked E.S. if she "wanted to try it." *Id.* E.S. said no, and Shaw replied that she "need[ed] to practice so when you do give your first blowjob to your boyfriend or whoever, they don't leave you because you can't do it right." *Id.* On a near daily basis, Shaw continued to ask E.S. if she wanted to practice oral sex.

[6] Sometime in December 2012, "around Christmas break of [E.S.'s] sixth grade year," when Shaw was thirty-five years old, and E.S. was eleven, E.S. agreed to Shaw's request to "practice" oral sex. *Id.* at 32, 33. Shaw and E.S. were in the living room of their house. Shaw was in his recliner, and E.S. was sitting on the couch. Christine was at work, and W.D. was visiting his father. Shaw instructed E.S. to kneel on the floor beside him, put her hand around his penis, and slowly move her hand up and down. A few minutes later, Shaw told her to put her mouth on his penis and "do the same thing." *Id.* at 33. E.S. stopped because she felt uncomfortable. She walked to the bathroom and cleaned her face "because [she] felt like [she] was about to cry." *Id.* at 35. Later, Shaw said to E.S., "the only problem you have is that you need to keep your teeth out of the way." *Id.* at 36.

[7] The next incident occurred in the spring of 2013, toward the end of E.S.'s sixth grade year when she was twelve years old. Christine was at work, and W.D. was upstairs in bed. Shaw and E.S. were in the living room, watching a zombie movie.

[8]     E.S. asked why a woman would be worried about putting on makeup during a zombie apocalypse. Shaw replied that humans have "urges," and that he "[bet] they had a[t] least one orgy." *Id*. at 37. Later that evening, Shaw reminded E.S. that she needed to practice oral sex. E.S. relented. Shaw was laying on the couch. He instructed E.S. to climb on top of him in the "69 position" and perform oral sex on him. While the act occurred, Shaw rubbed E.S.'s vaginal area on the outside of her clothing. At some point, Shaw told E.S. to stop because she "didn't need to taste that yet." *Id*. at 40. E.S. testified, "I did have something in my mouth during the second incident . . . that I didn't understand what it was and I thought it was just saliva and I swallowed it." *Id*. at 42. E.S. went to the bathroom to clean her face.

[9]     The third incident occurred in 2014, at the end of E.S.'s seventh grade year. She was thirteen years old. Shaw and E.S. were watching television in the living room. Shaw was sitting in his recliner and E.S. was laying on the couch. Shaw asked if E.S. wanted to practice oral sex. E.S. finally acquiesced, and following Shaw's instructions, knelt beside him and performed oral sex on Shaw. He told her to stop because, as he stated before, she "didn't need to taste that yet." Tr. p. 47. Christine was at work, and W.D. was at a friend's house.

[10]    On August 22, 2014, when E.S. was thirteen years old and in the eighth grade, she told her mother about the incidents with Shaw. She did not tell her mother sooner because Shaw told her that it was a secret, and that if she did tell, he would accuse her of lying.

[11] Christine took E.S. to the police station, and E.S. gave a statement to a detective. Shaw went to the police station on two separate occasions and provided two separate statements to the detective.

[12] Shaw was charged with child molesting as a Class A felony, child molesting as a Level 1 felony, and child solicitation as a Class D felony. The Level 1 felony count was dismissed. Following a jury trial, Shaw was found guilty of the remaining charges. He was sentenced to thirty years, with twenty-five years executed and five years suspended to probation. Shaw appeals.

[13] Shaw maintains there was insufficient evidence to support his convictions. When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the trial court's decision. *Drane v. State*, 867 N.E.2d 144 (Ind. 2007). It is the factfinder's role, and not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* To preserve this structure, when we are confronted with conflicting evidence, we consider it most favorably to the trial court's ruling. *Id.* We affirm a conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the trial court's decision. *Id.*

[14] Shaw maintains that the evidence is insufficient to support his convictions because E.S. presented inconsistent testimony at trial. According to Shaw, E.S. contradicted herself when she testified to when the incidents occurred and how many incidents occurred; E.S. was unable to provide distinguishing physical features of Shaw's penis; and, on the day E.S. reported the incidents to her mother, she showed no emotion, but later that day, she was observed laughing.

[15] To obtain a conviction for child molesting as a Class A felony, the State must have proved beyond a reasonable doubt that (1) Shaw, a person at least twenty-one years of age, (2) with E.S., a child under fourteen years of age, (3) performed or submitted to sexual intercourse or deviate sexual conduct. *See* Ind. Code § 35-42-4-3(a)(1) (2007); Appellant's App. p. 19. Regarding Shaw's conviction for child solicitation, at the time of the offense, the child solicitation statute provided in part:

> A person eighteen (18) years of age or older who knowingly or intentionally solicits a child under fourteen (14) years of age, or an individual the person believes to be a child under fourteen (14) years of age, to engage in:
> (1) sexual intercourse;
> (2) deviate sexual conduct; or
> (3) any fondling or touching intended to arouse or satisfy the sexual desires of either the child or the older person;
> commits child solicitation, a Class D felony.

Ind. Code § 35-42-4-6(b) (2007). "Deviate sexual conduct" (at the time of the offense) was defined in relevant part as "an act involving . . . a sex organ of one

(1) person and the mouth or anus of another person." Ind. Code § 35-31.5-2-94 (2012), *repealed by* P.L. 158-2013.

[16] E.S. testified unequivocally that Shaw instructed her to perform oral sex on him three times: in December of 2012; in the spring of 2013; and in 2014, at the end of her seventh grade school year. She testified that Shaw asked her on an ongoing and continuing basis if she wanted to perform oral sex on him. She accurately recalled where the incidents took place (in the living room) and what she and Shaw were doing prior to the acts. She remembered the instructions Shaw gave her as to how to perform the oral sex, and that Shaw's penis was erect at the time of the incidents. Christine testified that she asked E.S. how Shaw's semen tasted. E.S. recalled it tasting "bittery." Tr. p. 160.

[17] Shaw's videotaped statements to the detective regarding the incidents, were entered into evidence, along with a transcription. His statements corroborated E.S.'s testimony. Although Shaw claimed to be in a dream-state when the oral sex took place, because of medication he took, and maintained that E.S. initiated the sexual acts, he admitted that oral sex took place between him and E.S. Shaw told the detective the "[o]nly thing I remember is that [. . .] it was like I was having a dream. (Pause) I opened my eyes [. . .] saw [E.S. down there] or saw somebody down there." Ex. Vol. p. 75. He told the detective that the dream occurred in October or November, around 5:00 or 6:00 p.m.; that at the time of the "dream" he was downstairs in his recliner, Christine was at work, and W.D. was visiting his father; that his penis was semi-erect and was sticking to his underwear; and that the only female who could have been in the

dream was E.S. Shaw indicated that the dream of E.S. performing oral sex on him occurred twice. Shaw told the detective he had a conversation with E.S. about "blowjobs." He also told the detective that he remembered an instance when E.S.'s mouth was on his penis for "about [. . .] 30 seconds." *Id*. at 105. He later told the detective, "Okay [. . .] I [. . .] guess I was awake [during the oral sex]. But [. . .] as soon as [. . .] anything happened and everything I kicked her off and told her to stop." *Id*. at 153. And then, "I allowed it to happen, but I stopped it." *Id*. at 155.

[18] In assessing E.S.'s credibility, it was well within the province of the jury to reconcile any inconsistencies between her prior statements and her trial testimony. *See Bixler v. State*, 537 N.E.2d 21 (Ind. 1989). A jury may believe whomever they choose and disregard the testimony of witnesses they do not believe. *Borden v. State*, 272 Ind. 668, 400 N.E.2d 1368 (1980). When E.S. gave her statement to the detective, and was deposed by Shaw's attorney, she confused the dates of the incidents, and she neglected to tell the detective about the third incident. At trial, however, her testimony was unequivocal. Shaw, in his statements to the detective, admitted that the oral sex incidents occurred. Shaw's claims are merely a request for us to reweigh the evidence and judge the credibility of the witnesses, which we will not do. *See Sandleben,* 29 N.E.3d 126 (Ind. Ct. App. 2015), *trans. denied*. We find that the evidence presented was sufficient to support Shaw's convictions of child molesting and child solicitation. The judgment of the trial court is affirmed.

[19] Affirmed.

May, J., and Bradford, J., concur.